GALLAGHER, Plaintiff-Appellant, v. HARRISON, etc., et al.,
Defendants-Appellees.

Ohio Appeals, First District, Hamilton County.

No 7018    Decided May 23, 1949.

Paxton & Seasongood, Cincinnati, for plaintiff-appellant.
Nichols, Wood, Marx & Ginter, Cincinnati, for defendants-appellees

**OPINION**

By HILDEBRANT, J.:

This law and fact appeal tried de novo in this Court arose as a controversy within an organized labor union, to-wit: the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, an unincorporated labor union, international in scope, with a membership of approximately 300,000 persons, belonging to hundreds of affiliated and subordinate local lodges, all governed by a written constitution.

It becómes apparent at once that the rights involved have common origin in the constitution of the union.

Membership in the Brotherhood is voluntary and the members are obligated and qualify by taking a ritualistic oath, conforming to certain provisions of the union constitution, and including in part the following:

"I will obey the Constitution and Laws of this Organization, and all orders emanating from its proper offices when in conformity therewith; I will not knowingly wrong or defame a member myself, or allow it to be done by others, if in my power to prevent it.

"I will assist a member at all times insofar as my means or ability will permit and will guard a member's interest as my own.

\*    \*    \*

"I further promise and declare that I will not under any circumstances resort to or bring suit in any court or courts either Federal or State until after I have exhausted all my rights and used all means at my command within and under the laws of the Brotherhood."

Plaintiff, for a number of years prior to 1943, had been a member of the Brotherhood and of its affiliated local lodge in New York City, No. 2125, made up of employees of the Railway Express Agency.

Defendants, Grand President Harrison, Grand Secretary-Treasurer Ziegler, and Vice Grand President Morgan are officers of the Grand Lodge of the Brotherhood; defendant,

William Winston is a member of the Brotherhood and was Chairman of the Credentials Committee of the 1947 Grand Lodge Convention held in Cincinnati, May 12-17, 1947; defendant Monaghan is a member of the Brotherhood and Financial Secretary of Local Lodge No. 2125, New York City.

On complaint made to the Grand President by defendant Monaghan that plaintiff had violated Article 27 of the Union Constitution, he was expelled from the Union on the order of the Grand President, which expulsion was, on appeal, upheld by the Grand Executive Council of the Brotherhood. Plaintiff failed and refused to appeal the action of the Grand Executive Council to the Grand Lodge Convention at Cincinnati in May, 1947, as he had a right to do under the union constitution, and thereby failed to exhaust all remedies within the union.

Thereafter, in March, 1945, plaintiff brought an action against Monaghan—58 N. Y. S. (2) 618, in the Supreme Court of New York for New York County against defendant Monaghan as Secretary-Treasurer of Local Lodge No. 2125, and obtained a judgment against the Local Lodge, quoted as follows:

"FIRST: That the defendant, its agents, officers, servants and employees are hereby enjoined from interfering with the rights of the plaintiff as a member and as Chairman of the defendant association and from interfering with his right to participate in the activities, meetings and deliberations of the defendant association and to exercise all rights, privileges and duties as a member and Chairman of the defendant association.

"SECOND: That the plaintiff recover judgment against the defendant association in the sum of One Thousand Two Hundred ($1,200) Dollars together with costs and disbursements of this action as taxed in the sum of $130.75 and that plaintiff have execution therefor."

The relief sought here is for mandatory injunction, restoring him to membership in the union, and damages.

The facts appear at length in the excellent opinion of the Common Pleas Court, Schneider, J., with whose reasoning and conclusions this Court is in accord.

In this kind of action, it has become the generally accepted law, as stated in **Internatl. Union v. Owens, 119 Oh St, 94, 98-99**:

"It is a well-settled principle of law, recognized by the

courts of this state and by the courts of other states, that the members of a fraternal association by adopting a constitution and by-laws and providing reasonable rules and regulations for settling their own disputes, and by establishing their own tribunals of original, intermediate, and appellate jurisdiction, become bound thereby, provided such constitution, by-laws, rules and regulations do not contravene the laws of the state. It is also well settled that the members of such an association must conform to the reasonable rules and regulations thereof and must exhaust all remedies within the association and before such regularly constituted tribunals."

It is further generally accepted, as stated in the syllabus of Mace v. Carpenters & Joiners of America, et al., 31 N. P. (n. s.) 17:

"Membership in a trade union is in the nature of a contract, under which each member agrees to be governed by its constitution and rules; and where, under such rules, complaints of an individual member against injustices of the association officers are required to be tried before a trial board of the association and an appeal taken within the association before recourse to the civil courts, the latter tribunals are without jurisdiction in such cases until the remedies afforded by the constitution of the association have been exhausted."

Also, we cite, with approval **Boblitt v. C. C. C. & St. L. Ry. Co., 73 Oh Ap, 339,** the first paragraph of the syllabus:

"When the duly adopted laws of a voluntary labor organization provide for the final settlement of disputes among its members by a regularly constituted standing committee of members, its action thereunder is final, and conclusive and will not be disturbed by the courts unless it was unreasonable, arbitrary, capricious or oppressive."

We would further note that conduct of union officers in settling a dispute among the membership arbitrarily outside of or contrary to the union constitution, or in any manner in denial of due process of law would not be conclusive upon the courts But, we refer to the concurring opinion of Stuart, J., in Boblitt v. C. C. C. & St. L. Ry. Co., supra, wherein the following appears:

"It was said in Richards v. Morrison, 229 Mass., 458, at page 460, 118 N. E., 868:

" 'The plaintiff, by becoming a member of the association, agreed to be bound by its rules and subject to its discipline. As one of the incidents of membership, he consented to accept liability to expulsion, ordered in accordance with its regulations. When the action of the association or of its officers is challenged in respect to the exercise of the power of expulsion, the court does not sit in review upon the wisdom or expediency of their conduct. The decision of the organization and its officers acting in good faith in accordance with the rules on that subject is the final tribunal. There is no general appeal to the courts.' "

Generally, as to the requirements of due process, it is stated in 12 Am. Jur., p. 327:

"Generally speaking, due process is satisfied by one hearing which furnishes a full and fair opportunity within the rules hereinbefore discussed. No rehearing or review is necessary.

"A hearing before judgment, with full opportunity to present all the evidence and the arguments which the party deems important, is all that can be adjudged vital under the guaranty of due process of law. · Rehearing or new trials are not essential to due process of law, either in judicial or administrative proceedings. One hearing, if ample, before judgment satisfies the demand of the Federal Constitution in this respect.

"The right of appeal or review is not essential to due process, provided due process has already been accorded in the tribunal of first instance."

However, plaintiff here contends we never reach application of the principles cited above, for the reason that the defendants, other than Monaghan, although not parties to the New York suit, are bound thereby on principles of res judicata and estoppel by judgment, by reason of being privies thereto, and that such judgment is effective and must be enforced in this Court against them.

The claim of privity is based in part, and the first line of cleavage between the parties here is bound up in the allegation contained in the first paragraph of the petition before this Court, that membership in the local No. 2125 automatically conferred membership in the Brotherhood.

This allegation cannot be sustained under the constitution here involved, which is dual in character and clearly gives separate entity to the Brotherhood from the local lodges. It

is denominated "Constitution of the Grand Lodge, Statutes for the Government of Lodges and Protective Laws of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes."

In the Constitution, page 73, the following appears:

"STATUTES
for the
GOVERNMENT OF LODGES
Under the Jurisdiction of the Grand Lodge of
the Brotherhood of Railway and Steamship
Clerks, Freight Handlers, Express and
Station Employes.
PREAMBLE

For the purpose of effecting uniformity in the administration of privileges and benefits to its members, the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes ordains the following Constitution for the government of subordinate lodges."

Then articles 33 to 43 provide the separate constitution for the subordinate lodges.

The constitution of the Grand Lodge vests supreme and complete authority and control of all members and subordinate units in the Grand Lodge itself and the various provisions as to membership clearly show control to be vested in the Grand Lodge. In the Statutes for the government of lodges, Article 34, which sets forth the eligibility requirements for membership, the extent of that control as provided by the constitution is indicated by Section B:

The Grand President, when he deems it necessary in the interests of the Brotherhood, may make exceptions to this Section.

The Brotherhood and these defendants other than Monaghan were not parties to the New York suit, no order was made or attempted to be made against them, and from the dual character of the Constitution, it appears none could be made against them, so that the New York judgment could not be binding upon them unless their conduct in connection with that suit was of such a character as to bring them within the rule of privity.

The record is replete with evidence of the interest taken in, and assistance given the local lodge in the New York suit by certain of the Grand Lodge Officials; they furnished documents, suggested the attorney employed by the local

lodge, paid attorneys' fees and expenses after the judgment and urged an appeal, which the local refused to take. These activities, however, fall short of the generally accepted requirements illustrated by the following cases:—

**State of Ohio v. Cincinnati Tin & Japan Co., 66 Oh St, 182,** wherein it is stated in paragraph 1 of the syllabus:

"To constitute the record of an action a bar of res adjudicata it must appear in the record itself that the party against whom it is offered was a party or privy in blood or estate to the former action, or assisted in the prosecution or defense thereof for some benefit of his own."

Fish v. Vanderlip, 218 N. Y. 29, paragraph 1 of the syllabus:

"The general rule is that a former adjudication to be available as a plea must have been a previous determination of the same issues between the same parties or their privies. Under the term 'parties,' in this connection, the law includes all who are directly interested in the subject-matter, and had a right to make defense, or to control the proceedings, and to appeal from the judgment."

At page 37, quoting from Bigelow v. Old Dominion Copper M. & S. Co., 225 U. S. 111, 126, it is stated:

" 'To conclude Bigelow by the New York judgment, it must appear that he was either a party or a privy. That he was not a party to the record is conceded. He had no legal right to control the proceedings, nor to appeal from the decree. He was, therefore, a stranger, and was not concluded by that judgment as a party thereto. That he was indirectly interested in the result because the question there litigated was one which might affect his own liability as a judicial precedent in a subsequent suit against him upon the same cause of action is true, but the effect of a judgment against Lewisohn as a precedent is not that of res judicata, and the Massachusetts court was under no obligation to follow the decision as a mere judicial precedent. Nor would assistance in the defense of the suit, because of interest in the decision as a judicial precedent which might influence the decision in his own case, create an estoppel as to Bigelow.' "

And, at page 40, it is stated:

"We conclude that the matters pleaded in the fifth separate defense in the amended answer do not suffice to make the

judgment in the Municipal Court suit available to the appellant by way of estoppel. It is easy to conceive of a case where it would operate most harshly to hold a person bound by a former judgment adverse to his interest, merely because he had aided in combatting it, but without any legal right to control the course of the litigation, or to appeal from the adverse judgment although it was palpably erroneous."

Since the record here reveals merely assistance without control or right to appeal, we conclude these defendants, other than Monaghan, not bound by the judgment of the New York Court.

Monaghan, being a party in the New York suit, is bound by that judgment which is enforceable here. By that judgment, Monaghan is enjoined from interfering with the rights of plaintiff as a member and chairman of local 2125, and from interfering with his right to participate in the activities, meetings, and deliberations of local 2125, and in the exercise of all rights, privileges, and duties as a member and Chairman of local 2125.

It is claimed Monaghan defied the New York decree in that (a) he refused to accept Gallagher's tendered dues or recognize him as a member of local 2125; (b) refused to recognize Gallagher as duly elected and qualified delegate to the 1947 convention; (c) usurped the office of delegate and received emoluments thereof belonging to Gallagher, and that the relief against Monaghan should be (1) injunction similar to the New York decree, amplified to declare membership in the local entitles plaintiff to membership in the Brotherhood. (2) Adjudication Gallagher being the duly elected and qualified delegate to the Convention, Monaghan had no right to serve as alternate and by so doing usurped the office of delegate and deprived Gallagher of the emoluments thereof. (3) Money judgment against Monaghan for the same.

As to A above, the record shows that Monaghan accepted the tendered dues and transmitted same to the Grand President, who refused the payment and returned the certified check to plaintiff. Ex. 35, galley 50, reveals that Gallagher testified that at no time between April, 1943 and the time of tendering his check, February 9, 1945, was any attempt made by any one to expel or suspend him for non-payment of dues, That subsequent to that time, Gallagher has been accepted as a member, elected to office in December, 1946, and by the local as delegate to the 1947 Convention. If he has enjoyed this membership, without being out of pocket his dues, it is difficult to

see how Monaghan's handling of the tendered dues is in violation of the New York decree.

As to B above, there is nothing in the record to show Monaghan's attitude toward Gallagher as the elected delegate of 2125, and his was not the responsibility of seating or not seating Gallagher, and there is no evidence of his interference in the determination not to seat Gallagher in any way.

As to C above, the element of usurpation by Monaghan individually is lacking, his non-interference in seating being noted above. He sat as alternate delegate, as required by his election and duty to his local lodge and if he had refused to sit in violation of that election and duty, leaving his local without representation in convention, no emoluments would have accrued to Gallagher.

As to 1, declaring membership in the local entitles Gallagher to membership in the Brotherhood—the New York decree did not so declare, and certainly Monaghan is without authority to act in that connection and the views of this court on the subject are as set forth earlier in this opinion.

For the reasons given, the Court finds that Monaghan has not violated the New York decree, hence the relief prayed for against him must be denied.

The claims of denial of due process directed at the procedure and hearing and appeal within the union and at the provisions of the Constitution itself were litigated all the way to the Supreme Court of the United States. The Sixth Circuit Court of Appeals decision being reported in Reigel v. Harrison, 157 Fed. (2) 140, resulting in an adjudication that due process was not denied. In the change in the Constitution whereby the Grand President rather than a committee on committees selects the Committee on Appeals, we find nothing not consonant with due process.

In addition here, Gallagher testified before the Grand Executive Committee, Ex. 3, page 53: "I will say I have had a full and free hearing." This would seem to satisfy the requirements of due process, at least up to that point. As to delay of an appeal until the quadriennial convention, Gallagher abandoned his appeal thereto and waited until the convention was in session to bring this suit. Had he instituted suit at once, claiming hardship and denial of due process of law by delay, the court would have determined the adequacy and fairness of the union proceedings at once, and if entitled to relief, it could have been granted. Having voluntarily delayed, he can not now be heard to complain on that score.

By the procedure followed here of preliminary investigation, formal hearing with opportunity to defend in person, represented by counsel, and appeal, where an admittedly full and fair hearing was accorded, with final appeal provided for, but unavailed of, it appears that meticulous observation of the rights of the plaintiff here has been accorded in the instant case.

Under the settled law, no course is open to this court but to dismiss the appeal, for failure to exhaust the union remedies.

A decree similar to that of the trial court may be presented.

ROSS, PJ, HILDEBRANT & MATTHEWS, JJ, concur in opinion & judgment.