INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, LOCAL UNION NO. 986, Appellee,

v.

SMITH, Appellant.

[Cite as *Internatl. Bhd. of Elec. Workers v. Smith* (1992), 76 Ohio App.3d 652.]

Court of Appeals of Ohio,
Huron County.

No. H–91–23.

Decided April 10, 1992.

*Kalniz, Iorio & Feldstein, Ted Iorio* and *Ronald L. Rahal,* for appellee.

*Joseph R. Stewart,* for appellant.

ABOOD, Judge.

This is an appeal from a summary judgment granted by the Norwalk Municipal Court in favor of plaintiff-appellee, International Brotherhood of Electrical Workers, Local Union No. 986, in an action to collect a disciplinary fine previously imposed upon one of its members, defendant-appellant Mary Lou Smith.

Appellant sets forth one assignment of error:

"The trial court erred in granting summary judgment in favor of plaintiff-appellee."

The facts that are relevant to a determination of the issues raised by this appeal are as follows. Sometime between March 23, 1989 and April 5, 1989, appellant, a member of appellee, International Brotherhood of Electrical Workers, Local Union No. 986 ("union"), voluntarily informed her employer,

GTE North Incorporated ("GTE"), that a fellow employee and union member, Rita Kobak, intended to falsify her time sheet of March 23, 1989. Although Kobak was first discharged, following an arbitration which was held on November 2, 1989 she ultimately received a thirty-day suspension for her violation. On November 13, 1989, John Arbogast, the business agent for the union, filed an internal union charge against appellant for voluntarily informing to the employer on another union member in violation of Section 1, subsections (1) and (7), Article XXVII, of the union's constitution. On January 6, 1990, the trial board for the union found appellant guilty as charged, suspended her as a union member for approximately one year and fined her $5,000. Appellant did not attend the proceedings before the trial board and did not appeal its decision within the union. On October 29, 1990, the union filed a complaint in the Norwalk Municipal Court which sought to reduce to judgment $4,960 of the $5,000 fine. Attached to the complaint were unverified portions of the union's constitution and bylaws. On November 23, 1990, appellant filed an answer which raised the defenses that the amount of the fine is unreasonable, that the union failed to provide appropriate notice and due process in assessing the fine, and that the fine violates the Ohio and federal Constitutions.

On February 4, 1991, the union filed a motion for summary judgment to which it attached five unverified exhibits. On February 15, 1991, appellant filed a brief in opposition to the union's motion for summary judgment, to which she attached the affidavits of herself, Jeraldine J. McClure and attorney Joseph R. Stewart. Appellant argued, in part, that the unverified exhibits that were attached to the union's motion for summary judgment were not properly before the trial court because they were not "in the fashion required by Ohio Civil Rule 56." Appellant did not otherwise dispute the authenticity of the documents. On March 4, 1991, the union filed a reply and the affidavit of Arbogast.

The record that was before the trial court for consideration of the motion for summary judgment consisted of the pleadings, the various affidavits filed by both parties, and the unverified documents filed by the union.

The unverified documents included the following:

(1) a copy of a letter dated November 19, 1989, sent by the union to appellant, which notified her to appear before the trial board on January 6, 1990 to answer charges filed against her and advised her of the nature of the charges, who filed them, her right to bring witnesses, present evidence and cross-examine witnesses and to be represented by a union member. A photostatic copy of appellant's signature on a certified return receipt dated December 2, 1989, was reproduced on the bottom of the copy of the letter;

(2) the union's constitution which provides, under Article XXVII, that:

"Sec. 1. Any member may be penalized for committing any one or more of the following offenses:

"(1) Violation of any provision of this Constitution and the rules herein, or the bylaws, working agreements, or rules of a L.U.

" * * *

"(7) Wronging a member of the I.B.E.W. by any act or acts (other than the expression of views or opinions) causing him physical or economic harm[.]";

(3) a copy of a letter dated January 6, 1990, signed by the union and addressed to appellant, which advised her of the trial board's decision and that:

"Failure to comply with this Trial Board Decision will result in the Local Union collecting the penalties levied as provided for in Article XII, Section 12 of the Local Union Bylaws.

"The Trial Board of Local Union 986 refers you to Article XXVII, Sections 12 and 13 of the I.B.E.W. Constitution which read as follows:

" 'Any member who claims an injustice has been done him by any L.U. or trial board or by and Railroad Council, may appeal to the I.V.P. any time with [*sic*] forty-five (45) days after the date of the action complained of * * *.'

" 'No appeal for revocation of an assessment shall be recognized unless the member has first paid the assessment, which he can do under protest. When the assessment exceeds fifty ($50.00) dollars, payments of not less than forty ($40.00) dollars in monthly installments must be made. The first monthly installment must be made within fifteen (15) days from the date of the decision rendered and monthly installments continued thereafter or the appeal will not be considered.'

"If you have any questions regarding the above quoted article or sections of the Constitution, you are to contact the Chairman of the Executive Board for clarification of assistance as soon as possible.

"A copy of the International Constitution of the I.B.E.W. and the Local Union bylaws is being enclosed with this notification."

Attached to the letter was a photostatic copy of appellant's signature on a certified return receipt dated January 17, 1990;

(4) the union's bylaws which provide, under Section 4, Article XII, that:

"All fines and penalties levied, imposed, or assessed against a member of the IBEW under the IBEW Constitution and the bylaws of this Local Union, shall constitute a debt owed by the individual member to this Local Union and may be recovered as a debt owed by the individual member to the Local by a

lawsuit or action at law brought by the Local Union. If it is necessary for the Local to institute legal proceedings in order to recover any such debt, the individual member shall also be liable for all costs of said proceedings, together with a reasonable attorneys fee incurred by the Local, the amount thereof to be fixed by the Court[.]"; and

(5) excerpts from the transcribed proceedings of the Kobak arbitration that was held on November 2, 1989.

In his affidavit, Arbogast stated that appellant was not required to join the union and that she had the option of becoming a "service fee member"; that the union provides a copy of its constitution and bylaws to any member who requests them; that appellant never requested them; and that had appellant utilized the intra-union hearing and appellate procedures, it could have resulted in no discipline having been imposed upon her or in a reduction of the amount of the fine imposed.

In her affidavit, appellant stated that on March 23, 1989, she heard Kobak state that she intended to complete her time sheet to indicate that she had worked a full eight hours, even though she had not; that she subsequently informed the supervisor of Kobak's intent; that she did not intend to cause harm to Kobak; that she was not provided with a copy of the union's constitution or bylaws prior to March 23, 1989; that even had she been so provided, she would not have thought " * * * that advising a supervisor truthfully of an employee's intent to falsify a time sheet would violate the constitution or bylaws"; and that her monthly take-home salary is approximately $1,332.

In her affidavit, McClure stated that she was the Manager of Labor Relations for GTE; that the reporting of the falsification was in compliance with the GTE standards; and that Kobak's financial loss from her thirty-day suspension was approximately $1,698.

In his affidavit, Stewart, who is appellant's attorney in this case, stated that he is Associate General Counsel for GTE; that falsification of time sheets will result in higher rates paid by Ohio subscribers of GTE telephone service; that the Public Utilities Commission of Ohio could punish GTE for inaccurate labor expense records; that falsification of time sheets tends to subvert the rate-making process; and that it is his opinion that the fine imposed on appellant by the union is unreasonably high.

On April 18, 1991, the trial court filed its judgment entry in which it found, in pertinent part that:

" * * * defendant was a voluntary member of the International Brotherhood of Electrical Workers; that disciplinary proceedings were initiated

against her in accordance with the constitution and by-laws of the IBEW; that defendant was given notice of a hearing on said disciplinary proceedings and failed to appear; that the union imposed a fine against defendant and notified her both of the fine and procedure [*sic*] for appeal. The defendant failed to appeal as provided in the union constitution."; and granted the union's motion for summary judgment. It is from this judgment that appellant brings this appeal.

In her sole assignment of error, appellant contends that the trial court erred in granting appellee's motion for summary judgment. In support thereof, appellant argues that: (1) the facts which the union attempted to prove by its unverified documents " * * * were placed in issue by the affidavits submitted in support of Smith's brief in opposition to the Union's motion for summary judgment"; (2) the reasonableness of the fine must be determined by applying state law on contracts, voluntary associations and other applicable principles; (3) she never received a copy of the union's constitution; (4) in order to be enforceable, a union's actions in disciplining its members must be reasonable and must not be arbitrary, capricious, oppressive or the result of fraud or collusion and that the fine in this case is unreasonable and arbitrary; (5) she is not precluded from contesting the reasonableness of the fine on the basis that she failed to exhaust internal union remedies because the *union* prosecuted the present action and because the union's constitution does not explicitly require exhaustion; (6) in order to be enforceable, a union fine must not be contrary to public policy and that "[a]llowing a fine under the circumstances of this case would be contrary to the public policy of Ohio requiring public utilities to charge just and reasonable rates"; (7) she was denied due process because she was not provided with a copy of the union's constitution and bylaws and because " * * * the language contained therein is too vague to provide her with reasonable notice that she was at risk for [*sic*] being fined because of making a truthful statement to a supervisor regarding a co-employee's intention to commit fraud"; and (8) the imposition of the fine is prohibitive of free speech in violation of Section 411(a)(2), Title 29, U.S.Code.

The union responds: (1) " * * * the policies underlying the exhaustion requirement are not dependent upon which side of the 'v' the Union stands in a lawsuit"; (2) " * * * an allegation that discipline imposed is too harsh is not tantamount to a claim that the discipline is arbitrary"; (3) if union members are permitted to voluntarily inform on one another to management, " * * * the trust and solidarity which form the fabric of a union will be irreparably damaged"; (4) appellant was afforded due process, is subject to union rules as long as she is a member, could have requested and received a copy of the constitution and bylaws and could have argued vagueness and lack of notice at the internal union hearing " * * * which she chose not to attend"; and (5)

appellant's freedom of speech argument was not raised below, is precluded by failure to exhaust internal remedies, and the "speech" for which she was fined is not covered by Section 411(a)(2), Title 29, U.S.Code.

Appellant replies that the policy reasons supporting a requirement that a union member exhaust internal union appeals is not applicable when the union itself commences an action to reduce a fine imposed on one of its members to judgment, and that "unreasonable" is "arbitrary."

■ This court finds preliminarily that, although the trial court erred technically in considering the unverified exhibits attached to the union's motion for summary judgment, such error was not prejudicial. Civ.R. 61; App.R. 12(B). Appellant does not contend that these documents are not true and correct copies of the originals. As explained in *Knowlton Co. v. Knowlton* (1983), 10 Ohio App.3d 82, 87, 10 OBR 104, 110, 460 N.E.2d 632, 637:

"While technically the documents should have been verified by affidavit in accordance with Civ.R. 56(E), failure to follow this procedure is not prejudicial in this case, inasmuch as there is no suggestion that the documents involved are not authentic or that the result would be different if the documents were properly authenticated."

The remaining issues presented by appellant's assignment of error require this court to determine the extent to which a trial court may enforce and review the actions and decisions of a union in imposing a disciplinary fine upon one of its members in a suit brought by the union to reduce that fine to judgment where the member has failed to exhaust internal union remedies.

National labor policy is built on the premise that the most effective way for employees to improve their wages, hours and working conditions is to consolidate their strength through a democratically chosen union. *Natl. Labor Relations Bd. v. Allis–Chalmers Mfg. Co.* (1967), 388 U.S. 175, 180, 87 S.Ct. 2001, 2006, 18 L.Ed.2d 1123, 1127. Integral to this policy is the union's preservation of its viability which necessitates the power to protect against the erosion of its status " * * * through reasonable discipline of members who violate rules and regulations governing membership." *Id.* at 181, 87 S.Ct. at 2007, 18 L.Ed.2d at 1128. The power to fine a member for violations of union rules is essential if the union is to be an effective bargaining agent. *Id.* at 181, 87 S.Ct. at 2007, 18 L.Ed.2d at 1128.

■ Generally, the provisions set forth in a union's constitution and bylaws, which define punishable conduct and establish the procedures for internal trial and appeal, constitute a contract between the union and its members. *Id.* at 182, 87 S.Ct. at 2008, 18 L.Ed.2d at 1129. " 'The courts' role is but to enforce the contract.' " *Id.* at 182, 87 S.Ct. at 2008, 18 L.Ed.2d at 1129, quoting

Summers, The Law of Union Discipline: What The Courts Do in Fact (1960), 70 Yale L.J. 175, 180. Since federal law does not preclude the imposition of disciplinary fines by unions upon its members or the resort to judicial enforcement of such fines, "[s]tate law governs union lawsuits to collect disciplinary fines." *Local Lodge 1297 v. Allen* (1986), 22 Ohio St.3d 228, 232, 22 OBR 407, 410, 490 N.E.2d 865, 869; *Natl. Labor Relations Bd. v. Boeing Co.* (1973), 412 U.S. 67, 74, 93 S.Ct. 1952, 1957, 36 L.Ed.2d 752, 757; *Allis–Chalmers Mfg. Co., supra.*

■ "Under Ohio law, unions and other unincorporated associations may sue their voluntary members to collect debts and to enforce discipline." *Local Lodge 1297, supra,* 22 Ohio St.3d at 232, 22 OBR at 410, 490 N.E.2d at 869. A disciplinary fine imposed by a union upon its member is a binding contractual obligation that constitutes a debt. *Id.;* 48 American Jurisprudence 2d (1979) 308, Labor and Labor Relations, Section 397; Annotation (1967), 13 A.L.R.3d 1004.

■ Ohio courts will not review the actions and decisions of a union in disciplining its members in the absence of mistake, fraud, collusion or arbitrariness, where the union has afforded the member due process. *State ex rel. Ohio High School Athletic Assn. v. Judges* (1962), 173 Ohio St. 239, 19 O.O.2d 52, 181 N.E.2d 261, paragraph three of the syllabus; *Lough v. Varsity Bowl, Inc.* (1968), 16 Ohio St.2d 153, 45 O.O.2d 483, 243 N.E.2d 61, syllabus; *Local Union 673, Bhd. of Elec. Workers v. Markell* (1989), 64 Ohio App.3d 217, 220, 580 N.E.2d 1150, 1152; *Hennekes v. Maupin* (1963), 119 Ohio App. 9, 13, 26 O.O.2d 97, 99, 192 N.E.2d 204, 207; *Gallagher v. Harrison* (1949), 86 Ohio App. 73, 77, 55 Ohio Law Abs. 97, 100, 40 O.O. 494, 495, 88 N.E.2d 589, 592; see, generally, Annotation (1952), 21 A.L.R.2d 1397. In this regard, a complaint that the penalty imposed is too harsh does not amount to an allegation of arbitrariness. *State ex rel. Ohio High School Athletic Assn., supra,* 173 Ohio St. at 248, 19 O.O.2d at 57, 181 N.E.2d at 267.

■ Additionally, Ohio courts will generally not intervene in internal union disputes until all remedies and appeals within the union have been exhausted. Exhaustion is not required, however, where the appeal would be futile or result in unreasonable delay, where the union's proceedings are void, or where non-internal considerations of public policy come into play. *Internatl. Union of Steam & Operating Engineers v. Owens* (1928), 119 Ohio St. 94, 98–99, 162 N.E. 386, 388; *Campbell v. Bhd. of RR. Trainmen* (1965), 4 Ohio App.2d 81, 85, 33 O.O.2d 140, 142, 212 N.E.2d 650, 652; *Gallagher, supra,* 86 Ohio App. at 75–76, 55 Ohio Law Abs. at 99–100, 40 O.O. at 495, 88 N.E.2d at 592; see, generally, Annotation (1963), 87 A.L.R.2d 1099; 39 Ohio Jurisprudence 3d (1982) 519, Employment Relations, Section 424. See, also, Summers, The Law

of Union Discipline: What The Courts Do in Fact, *supra,* at 207–211; *Clayton v. United Auto. Workers* (1981), 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538; *Natl. Labor Relations Bd. v. Indus. Union of Marine & Shipbuilding Workers of Am.* (1968), 391 U.S. 418, 425, 88 S.Ct. 1717, 1722, 20 L.Ed.2d 706, 712–713.

While no Ohio court has addressed the specific issue of whether the exhaustion doctrine applies when suit is brought by the union, we agree with the Supreme Court of Wisconsin that the policies supporting application of the doctrine to suits by the member are equally applicable to suits by the union and that, in a suit brought by the union against its member, the member must plead and prove exhaustion of remedies before he can benefit from judicial intervention. *United Auto. Workers Local 283 v. Scofield* (1971), 50 Wis.2d 117, 137, 183 N.W.2d 103, 113–114. Otherwise, the member could avoid her obligation to exhaust intra-union remedies and appeals by simply refusing to pay the fine. Nevertheless, although Ohio courts have not addressed the issue, it is universally recognized by courts of other jurisdictions that, in a suit brought by the union, the court will make a determination as to whether the fine was arbitrarily imposed and unreasonable in amount before enforcing it, even where the member has failed to exhaust internal union remedies. In such case, upon determination that the fine is both arbitrary and unreasonable, the court will reduce it. The severity of the fine alone or its punitive effect, however, is not tantamount to arbitrariness or unreasonableness since the levying of a fine is not merely the collection of damages but relates to the power of a labor organization to promote solidarity among its members. Among the factors considered by the courts in making a determination as to whether the fine is arbitrary and unreasonable are: (1) methods and formulas used for calculation, (2) the member's conduct for which the fine was imposed, (3) income of the member, (4) amount of fine, (5) resulting harm or damage to the union or its other members, (6) nature of offenses being punished, (7) manner and extent to which the member benefited or profited, and (8) the current economic conditions. *CWA Local 7400 v. Abrahamson* (1988), 228 Neb. 335, 346–347, 422 N.W.2d 547, 553–554; *CWA, Local 5714 v. Reeb* (Ind.App.1988), 520 N.E.2d 111, 117–118; *Scofield, supra,* 50 Wis.2d at 133–134, 183 N.W.2d at 112, 113–114; *No. Jersey Newspaper Guild Local No. 173 v. Rakos* (1970), 110 N.J.Super. 77, 90–91, 264 A.2d 453, 460–461, certiorari denied (1970), 56 N.J. 478, 267 A.2d 60; *Walsh v. CWA Local 2336* (1970), 259 Md. 608, 611, 271 A.2d 148, 150–151; *Jost v. CWA Local 9408* (1970), 13 Cal.App.3d Supp. 7, 11–12, 91 Cal.Rptr. 722, 725; see, also, *Natl. Labor Relations Bd. v. Boeing Co., supra,* 412 U.S. at 76, 93 S.Ct. at 1957–1958, 36 L.Ed.2d at 759, fn. 12; *Natl. Labor Relations Bd. v. Allis–Chalmers Mfg. Co., supra,* 388 U.S. at 193, 87 S.Ct. at 2013, 18 L.Ed.2d at 1135, fn. 32,

quoting Summers, Legal Limitations on Union Discipline (1951), 64 Harv. L.Rev. 1049, 1078.

As to appellant's contention that the union's constitution does not specifically require that internal remedies must be exhausted before the member can resort to the courts, we find that the "exhaustion" doctrine is not dependent upon such a requirement. When voluntary members of a fraternal organization establish their own rules for settling disputes and their own tribunals of trial and review, they are bound thereby and must exhaust all remedies within the association and before such tribunals. See, *e.g.*, *Campbell, supra*, 4 Ohio App.2d at 85, 33 O.O.2d at 142, 212 N.E.2d at 652; 39 Ohio Jurisprudence 3d (1982) 519, Employment Relations, Section 424; 6 Ohio Jurisprudence 3d (1978) 252, Associations, Section 5; Annotation, 87 A.L.R.2d 1099, 1104–1107, *supra*, Section 3.

As to appellant's argument that a union rule prohibiting a member from voluntarily informing her employer that a fellow union member falsified her time sheet contravenes the "public policy" of maintaining just and reasonable public utility rates, we find that this contention assumes too much; the connection between the express statutory methods of implementation of this "policy" and a union rule prohibiting union members from voluntarily informing on other union members to the employer is simply too remote.

As to appellant's contention that the fine violates her right to freedom of speech pursuant to Section 411(a)(2), Title 29, U.S.Code, we find that it is clear that Section 411(a)(2), Title 29, U.S.Code does not cover the "speech" in this case. This statute is designed to promote union democracy by ensuring freedom of dissemination of "views, arguments, or opinions" by union members. To extend this statute to afford protection to a union member who gives information to her employer would serve to defeat the premise upon which our national labor policy is built.

Upon consideration of the entire record of proceedings that was before the trial court upon summary judgment and the law as set forth above, this court further finds that: (1) pursuant to our national labor policy, and Ohio law, a labor union has the power to establish rules and regulations governing its internal affairs and to impose disciplinary sanctions upon its voluntary members who violate those rules or regulations and to bring suit to enforce disciplinary sanctions and collect disciplinary fines; (2) a court may not review the actions and decisions of a labor union in imposing a disciplinary fine assessed against its member, where due process was afforded, absent a finding of mistake, fraud, collusion or arbitrariness; (3) appellant has not been denied due process as she received adequate notice of the charges against her and an opportunity to rebut those charges and it is undisputed that she did not

receive a copy of the constitution and bylaws before committing the violation because she did not ask for them; (4) a court will not intervene in internal labor union disputes regardless of who brings the action unless the member pleads and proves that she has exhausted all intra-union remedies and appeals, unless to do so would be futile, result in unreasonable delay or where the union rules or proceedings are void; (5) appellant has failed to plead and prove that she exhausted her intra-union remedies and appeals, and none of the exceptions apply; (6) in a suit brought by a labor union to collect a disciplinary fine, when the issue is raised the court must determine if the fine is both arbitrary and unreasonable before rendering final judgment, even where the member has failed to plead and prove exhaustion of intra-union remedies and appeals; and (7) appellant did present evidence that was sufficient to raise a genuine issue of fact as to whether the fine was arbitrary and unreasonable.

Accordingly, appellant's assignment of error is well taken only as to whether the fine imposed upon appellant by the union is arbitrary and unreasonable.

On consideration whereof, this court finds that substantial justice was not done the party complaining, and the judgment of the Norwalk Municipal Court is reversed. This cause is remanded to said court solely to make a determination as to whether the fine is both arbitrary and unreasonable and, if both arbitrary and unreasonable, to reduce it before rendering final judgment. Costs are assessed against appellee.

*Judgment reversed.*

MELVIN L. RESNICK and SHERCK, JJ., concur.