CORNETT, Appellant,

v.

IUE LOCAL 801 et al., Appellees.

[Cite as *Cornett v. IUE Local 801* (1999), 131 Ohio App.3d 776.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 17322.

Decided Jan. 15, 1999.

*Aaron G. Durden,* for appellant.

*Richard F. Rice* and *Thomas J. Replogle,* for appellees.

FAIN, Judge.

Plaintiff-appellant Hobert Cornett appeals from a summary judgment rendered against him and in favor of defendants-appellees I.U.E.[1] Local 801, George Dunaway, and Ron Hale. Cornett argues, among other things, that the trial court erred in rendering summary judgment against him because of his alleged failure to exhaust the remedies available to him under his union's bylaws and constitution prior to his filing suit in common pleas court against his union for damages suffered as a result of his temporary removal from the position of union committeeman.

We conclude that, contrary to the defendants-appellees' contention, this action is not governed by Section 301 of the Labor–Management Relations Act, 1947, Section 185, Title 29, United States Code ("LMRA"), more commonly referred to as the Taft–Hartley Act, since it does not involve a suit for a violation of a contract between an employer and a union, or between two unions. We further conclude that a triable issue of fact remains as to whether Cornett failed to exhaust his internal remedies, since defendants-appellees failed to point to evidence in the record indicating the absence of a genuine issue of material fact

---

1. International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers.

regarding that question. Finally, we conclude that the trial court erred by rendering summary judgment in favor of Dunaway and Hale because of Cornett's failure to specifically respond to their assertion in their motion for summary judgment that individual union members could not be named as defendants in this action, pursuant to Section 301(b) of the LMRA; Dunaway and Hale were not entitled to summary judgment on this issue as a matter of law, since Section 301(b), like Section 301(a), does not apply to this case. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

I

Cornett is an employee of General Motors and a member of I.U.E. Local 801, the recognized labor organization for General Motors employees. Dunaway and Hale are the union's president and vice-president, respectively.

In January 1997, the elected committeeman for District 6, Crew B, of IUE Local 801 resigned from office, and Cornett, as elected alternate committeeman, filled the vacancy. Cornett was challenged for the position within thirty days, and a special election for the committeeman position was held on February 27, 1997. Cornett won the election, thereby becoming committeeman for District 6, Crew B, in his own right.

On April 9, 1997, the union informed Cornett that he was not eligible to run in the upcoming general election scheduled for May 22, 1997, because a review of the attendance rosters of the union meetings had revealed that he did not attend the required number of meetings during the year preceding the election. The review also revealed that Cornett had not met the attendance requirements for the February 27, 1997 election. Accordingly, Cornett was removed from office as committeeman, though he was permitted to continue to function as alternate committeeman.

On May 7, 1997, Cornett filed a complaint in common pleas court, seeking to enjoin the union from holding the May 22 election until the union gave him an opportunity to prove that he had met the attendance requirement for union office. The union, Dunaway, and Hale were named as defendants.

On May 9, 1997, Cornett filed a charge with the union, arguing that he had been wrongfully removed from office. On May 15, 1997, the union's executive board restored Cornett to his position as committeeman, and formed an investigative committee to review his eligibility to run in the May 22 election. On May 19, 1997, the board restored Cornett's candidacy for the position of committeeman for the May 22 election. The board also offered to delay the election so that

Cornett would have additional time to campaign for the office. Cornett, however, declined the offer.

Cornett lost his bid for re-election as committeeman in the May 22 election.

On June 2, 1997, Cornett filed an amended complaint in the trial court, alleging that he had suffered "emotional distress," "mental anguish," and "public [embarrassment]" as a result of defendants' conduct in temporarily removing him from office, suspending his candidacy, and then "unceremoniously" placing him back in office just prior to the May 22nd election. Cornett requested monetary and punitive damages, as well as attorney fees and court costs.

On June 10, 1997, Cornett filed new charges with the union's executive board, claiming that his opponent in the election for committeeman was given an undue and unearned advantage. Cornett also alleged that he "was intentionally not allowed to participate" in the election for alternate committeeman.

On June 18, 1997, Dunaway sent the following letter to Cornett:

"On June 10, 1997, our office received a formal complaint charging misconduct and discrimination against IUE Local 801 by you.

"I made contact with you on June 11, 1997, to inquire as to what you would consider a satisfactory resolution to the above charges. You responded that you wished for said charges to be presented to the IUE Local 801 Executive Board, which I agreed to do. I asked you at that time if he [*sic*] would be agreeable to holding another alternate election. Your response was that you would prefer to let legal council [*sic*] 'work it out.'

"On June 12, 1997, your complaint was presented before the IUE Local 801 Executive Board. The Board made [a] recommendation to refer the complaint to IUE Local 801 Legal Advisor, Dick Rice. Thus, you should have your attorney contact Dick Rice in regard to your complaint."

In May 1998, the union, Dunaway, and Hale moved for summary judgment against Cornett on the grounds that he had failed to exhaust his internal remedies. In furtherance of their motion, defendants noted that Cornett did not appeal from the executive board's decisions of May 15 or May 19, and maintained that Cornett had voluntarily withdrawn or abandoned his June 10 charge. To support this latter contention, the defendants cited the June 18 letter that Dunaway sent to Cornett. Finally, contending that Cornett's action was governed by Section 301 of the LMRA, defendants contended that Dunaway and Hale were entitled to summary judgment because they were not proper parties to the action, pursuant to Section 301(b) of the LMRA.

Cornett responded to defendants' motion by disputing defendants' claim that he had withdrawn his June 10 charge. Cornett asserted that the June 18 letter

demonstrated that he *did* want his charge presented to the executive board. Cornett contended that he had pursued his internal remedies with the union by filing charges with the executive board on May 9 and again on June 10, but that it was the union and Dunaway who had "closed the door" on his charge of improper removal by misinterpreting his statements to them.

The trial court granted defendants' motion for summary judgment. Specifically, the trial court, referring to the June 18 letter, found that "[w]hen union officials inquired about the [June 10] 'charges,' [Cornett] replied that he would prefer legal counsel to 'work it out.' " From this, the trial court concluded that Cornett "refuses to allow the union to proceed with the appeal process" and that, therefore, Cornett had failed to exhaust the internal remedies set forth in the union's constitution and bylaws. The trial court also found that Cornett had not responded to the portion of defendants' motion for summary judgment in which they argued that Dunaway and Hale could not be named as individual defendants, and therefore granted summary judgment in favor of defendants on that issue as well.

Cornett now appeals from the trial court's judgment.

## II

Cornett's first and third assignments of error state:

"Whether the court erred by dismissing the case under Ohio Rule of Civil Procedure 56 when a genuine issue of material facts [*sic* ] remains as to whether the union representatives improperly removed appellant/plaintiff as 'committeemen [*sic* ].' "

"Whether the trial court erred in determining that the appellant/plaintiff failed to exhaust his administrative remedies prior to proceeding in court for relief."

In his first and third assignments of error, Cornett asserts that the trial court erred in granting summary judgment against him on the grounds that he failed to exhaust his internal remedies.

A trial court may grant a moving party summary judgment pursuant to Civ.R. 56 if there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, which is adverse to the nonmoving party, who is entitled to have the evidence viewed most strongly in his favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274.

The moving party cannot discharge this burden by making conclusory assertions that the nonmoving party has no evidence to prove its case. *Id.* Instead, the moving party must point to some evidence of the type listed in Civ.R. 56(C)—the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any—that affirmatively demonstrates that the nonmoving party has no evidence to support his claims. *Id.* If the moving party satisfies its initial burden, then the nonmoving party has a reciprocal burden pursuant to Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial; if the nonmoving party does not so respond, then summary judgment, if appropriate, must be entered against it. *Id.*

## A

### Exhaustion of Internal Remedies

Cornett argues that the question whether he exhausted his internal remedies remains in conflict based upon the June 18 letter Dunaway sent to him. We agree.

Generally, courts will not intervene in disputes between labor unions and their members until the party bringing suit has exhausted all remedies provided for in the union's bylaws and constitution. *Internatl. Bhd. of Elec. Workers v. Smith* (1992), 76 Ohio App.3d 652, 661, 602 N.E.2d 782, 787–788. A party need not exhaust his union's internal remedies where doing so would be futile or result in unreasonable delay, where the union's proceedings are void, or where considerations of public policy come into play. *Id.*

When appellees moved for summary judgment on the grounds that Cornett had failed to exhaust his internal remedies, they relied primarily on the argument that Cornett had withdrawn his June 10 charge, citing the June 18 letter as proof of that claim. The trial court accepted this argument in granting appellees summary judgment. However, the June 18 letter does not support appellees' contention that Cornett withdrew his June 10 charge. Indeed, the letter indicates that Cornett *did* want the executive board to hear his charge. At most, the letter simply indicates Cornett's desire to allow his attorney to represent his interests in the matter before the executive board.

Appellees have tacitly acknowledged that the June 18 letter does not, in fact, support a claim that Cornett withdrew his June 10 charge, since they no longer rely on that contention in their appellate brief. Instead, appellees now argue simply that Cornett failed to exhaust his internal remedies by failing to appeal the executive board's decisions of May 15 and 19 to the union's membership, as permitted under the union's constitution. Appellees contend that those decisions

gave Cornett the relief he requested, and that if he was unhappy with the executive board's decisions, he should have appealed them to the union's membership within ten days of their issuance as permitted under the constitution of the International Union.

The problem with this argument, however, is that the June 18 letter shows that the union itself did not consider Cornett precluded from reopening the matter due to his failure to appeal the executive board's May 15 and 19 decisions. Instead, as the June 18 letter makes clear, when Cornett filed his June 10 charge, the union contacted Cornett, seeking a "satisfactory resolution" of his charges. If the union had simply dismissed Cornett's June 10 charge on the basis that it had already disposed of the issues raised therein, and that Cornett had not availed himself of his right to appeal to the union membership, then the union's argument would not be without force. However, rather than simply dismissing Cornett's June 10 charge, the union decided to *entertain* it, first, by seeking to arrive at a settlement with Cornett, then submitting Cornett's charge to the executive board, and finally referring the matter to the union's attorney and advising Cornett to have his attorney contact theirs in regard to his June 10 charge. There is no evidence in the record showing how, or even if, Cornett's June 10 charge was decided. Under these circumstances, a triable issue of material fact remains as to whether Cornett failed to exhaust his internal union remedies before filing an action in common pleas court, or whether the union waived the requirement that Cornett first pursue his internal union remedies.

Since appellees failed to meet their initial burden of pointing to evidence in the record demonstrating the absence of a genuine issue of material fact concerning the exhaustion-of-remedies issue, the burden never shifted to Cornett to point to specific facts showing that he did exhaust his internal remedies or that he fell within an exception to that requirement. See *Dresher, supra,* 75 Ohio St. 3d at 296, 662 N.E.2d at 275–276. We hasten to add, however, that at some point in the proceedings on remand—whether in a renewed motion for summary judgment, this time supported by adequate evidence, or at trial—Cornett will have to make that kind of a showing, or appellees will be entitled to judgment as a matter of law.

B

Grant of Summary Judgment to Individual Defendants–Appellees

The trial court also erred in granting Dunaway and Hale summary judgment on the independent basis of Cornett's failure to respond to the portion of appellees' motion for summary judgment alleging that Dunaway and Hale could not be named as individual defendants in this action pursuant to Section 301(b) of the LMRA.

Preliminarily, appellees argue in footnote 3 of their appellate brief that Cornett "has not presented for appeal the dismissal of Defendants George Dunaway or Ron Hale." We disagree. Cornett essentially argued, that the LMRA does not apply to this case, and requested that we "vacate the trial court's decision dismissing Defendant IUE Local 801 *and others* from this action." (Emphasis added.) This is sufficient to place the issue before us. Moreover, it is apparent that appellees understood that Cornett was challenging the trial court's grant of summary judgment to Dunaway and Hale in their individual capacities, as well as to the union, since appellees further stated in footnote 3 of their appellate brief that "[i]f it is Plaintiff's [Cornett's] position the NLMR Act [*sic* ] is not applicable Defendants would desire the opportunity to brief that issue." Since appellees already had a full opportunity to brief the issue of whether the LMRA was applicable to this case, their informal request for an opportunity to submit further briefing is denied.

The trial court granted summary judgment to Dunaway and Hale on this issue *solely* because of Cornett's failure to specifically respond to appellees' legal argument that individual members of a union could not be named as defendants in this action. In doing so, the trial court cited *Dresher* and Civ.R. 56(E). While it is true that Cornett failed to respond to this specific argument, that omission, while unfortunate, was not fatal. The language in *Dresher* cited by the trial court in support of its holding does not apply to this issue. See *id.* 75 Ohio St.3d at 293, 662 N.E.2d at 273–274. That language concerned the consequences that result when a party moving for summary judgment meets its initial burden of pointing to evidence in the record demonstrating the absence of a genuine issue of material fact, and the nonmoving party fails to respond, as required under Civ.R. 56(E), by pointing to specific facts that indicate the existence of a genuine issue for trial. In those circumstances, summary judgment will be granted against the nonmoving party; however, even in those circumstances, summary judgment should be granted only "if appropriate." Civ.R. 56(E).

Here, the appellees did not present any evidence in support of their argument that pursuant to Section 301(b) of the LMRA, Dunaway and Hale could not be named as individual defendants in Cornett's lawsuit. Instead, they were simply raising a legal argument. Although Cornett failed to respond to this specific argument, the trial court was nevertheless obligated to consider the substantive merits of the argument, and to grant Dunaway and Hale summary judgment on the issue only if they were entitled to it as a matter of law. *Harless, supra.* The trial court was not entitled to grant what, in effect, amounts to a default judgment on the issue.

We also cannot agree with appellees' underlying assertion that Section 301 of the LMRA applies to this case and that pursuant to Section 301(b), Dunaway and Hale could not be named as individual defendants to this action.

This court has held that neither the National Labor Relations Act (the Wagner Act) nor the Labor Management Reporting and Disclosure Act of 1959 (the Landrum–Griffin Act) preempts the jurisdiction of state courts regarding labor union controversies, except where the federal statutes expressly withdraw jurisdiction from them. *Carroll v. N.C.R. Employees' Indep. Union* (1967), 12 Ohio App.2d 194, 196–198, 41 O.O.2d 332, 333–334, 232 N.E.2d 410, 412–413. Thus, we have concluded, a union officer who claims that his union wrongfully discharged him from his office is permitted to seek relief in state court. *Id.*

Appellees concede that the common pleas court had jurisdiction to issue a ruling in this matter but contend, nevertheless, that *state law* on the issue is preempted by Section 301 of the LMRA, which provides:

"(a) Venue, amount, and citizenship

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"(b) * * * [E]nforcement of money judgments

"* * * Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets." Section 185, Title 29, U.S.Code.

Citing *Wooddell v. Internatl. Bhd. of Elec. Workers, Local 71* (1991), 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419, appellees assert that suits between unions and their members are governed by Section 301 of the LMRA, rather than state law. However, appellees reliance on this case is misplaced.

*Wooddell* discusses the circumstances under which a federal district court has jurisdiction to rule on a suit brought pursuant to Section 301 of the LMRA. United States district courts have jurisdiction under Section 301(a) to rule on a suit brought by a union member against his union when the suit alleges (1) a violation of a contract between an employer and a labor organization (representing employees in an industry affecting commerce) or (2) a violation of a contract between such labor organizations. *Wooddell, supra,* 502 U.S. at 98, 112 S.Ct. at 498, 116 L.Ed.2d at 427–428. Section 301(a) is not limited to suits brought by a party to the contract allegedly violated; rather, a union member

may properly bring suit pursuant to Section 301(a), provided that his suit alleges a violation of a contract between an employer and a union, or between two unions. *Id.* at 98–99, 112 S.Ct. at 498–499, 116 L.Ed.2d at 427–429. The term "contract" in Section 301(a) encompasses union constitutions. *Id.* at 99, 112 S.Ct. at 498–499, 116 L.Ed.2d at 428–429. Thus, a union member may sue his union for a violation or breach of his union's constitution pursuant to Section 301, *"but only if it is charged that the breach alleged violates a contract between two labor organizations."* (Emphasis added.) *Id.* at 98–99, 112 S.Ct. at 498, 116 L.Ed.2d at 428, fn. 3.

Here, Cornett did not allege in his amended complaint that his local union breached a contract it had with his employer or another union, like the international union with which the local union is associated. Cf. *id.* at 100, 112 S.Ct. at 499, 116 L.Ed.2d at 429. Thus, Section 301 of the LMRA has no application to this case. Accordingly, this portion of appellees' summary judgment motion also should have been overruled.

In light of the foregoing, Cornett's first and third assignments of error are sustained.

### III

Cornett's second assignment of error states:

"Whether the union denied appellant/plaintiff a proper appeal in accordance with the by–laws of IUE Local 801 when it dismissed the appeal of appellant."

This assignment of error is moot in light of our disposition of Cornett's first and third assignments of error. Thus, we need not decide it. App.R. 12(A)(1)(c).

### IV

Cornett's first and third assignments of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

BROGAN and WOLFF, JJ., concur.