OPINION
Appellant, George Swank, appeals the judgment of the Lake County Court of Common Pleas, adjudicating him a sexual predator pursuant to R.C. Chapter 2950.
On August 8, 1997, appellant was indicted by the Lake County Grand Jury on one count of rape of a twelve year old girl, a felony in the first degree, in violation of R.C. 2907.02, with a specification of force.
On December 16, 1997, appellant withdrew his former plea of not guilty and entered a plea of guilty to one count of rape without the force specification. The trial court accepted appellant's plea by judgment entry on December 24, 1997. The trial court then referred the matter to the probation department for the preparation of a presentence investigation report and requested a victim impact statement.
Prior to sentencing, the matter came on for a hearing to determine whether appellant was a sexual predator. The trial court found, by clear and convincing evidence, that appellant was a sexual predator as defined in R.C. 2950.01. Thereafter, the court sentenced him to a term of five years in prison.[1] This sentence is reflected in the trial court's judgment entry dated February 5, 1998.
From this judgment appellant appeals, asserting three assignments of error for our consideration:
 "[1.] R.C. 2950.09(B) is unconstitutionally vague, thus denying defendant-appellant due process of law[.]
 "[2.] The finding that the defendant-appellant is a sexual predator was against the manifest weight of the evidence[.]
 "[3.] By sentencing the appellant pursuant to Sections 2967.11 and 2967.28 of the Ohio Revised Code, as amended by senate Bill 269, the trial court relied on unconstitutional legislation and instituted an unlawful sentence."
 In the first assignment of error, appellant challenges the constitutionality of R.C. 2950.09, Ohio's version of New Jersey's Megan's Law. Specifically, appellant contends that the statute is unconstitutionally vague as it gives the trial court virtually no guidance as to which party has the burden of proof, nor how strong a showing is required for a defendant to be adjudicated a sexual predator.
The Supreme Court of Ohio in State v. Williams (2000), 88 Ohio St.3d 513,533, rejected this precise argument and concluded that R.C. Chapter 2950 is not void for vagueness. There is "nothing impermissibly vague" about employing the clear and convincing evidence standard in R.C. Chapter 2950. Williams at 533. Although the general language of R.C. Chapter 2950 is broad, and the guiding factors may have been broadly worded, "a certain level of broadness in the language of [the statute] allows for individualized assessment rather than an across-the board-rule."Williams at 534. For these reasons, appellant's first assignment of error is without merit.
Under the second assignment of error, appellant presents two separate issues for our review.
First, appellant maintains that the exhibits introduced by the state, to-wit: the presentence investigation report, the victim impact statement, the psychological evaluation, and the police report, should not have been admitted at the sexual predator hearing because this evidence was not properly authenticated under Evid.R. 901.
Before addressing the merits of appellant's argument, we note that he never made an objection as to the authenticity of the documents at the sexual predator hearing. In fact, no objection was made at all when the documents were admitted into evidence. Consequently, appellant waived this issue absent plain error. Crim.R. 52(B). Plain error occurs when, but for the error, the outcome would clearly be otherwise. State v. Cook
(1998), 83 Ohio St.3d 404, 426; State v. Allen (1995), 73 Ohio St.3d 626,634-635.
Before a document may be received into evidence, it must be properly authenticated under either under Evid.R. 901 or 902. See Evid.R. 901(A).[2] The general purpose behind authenticating documents is to prove that the writing is what the proponent claims it to be. See Evid.R. 901(A). See, also, State v. White (1989), 65 Ohio App.3d 564,572; State v. Palmer (Aug. 29, 1996), Belmont App. No. 89-B-28, unreported, 1996 WL 495576, at 10.
However, in Cook, supra, the Supreme Court of Ohio held that the rules of evidence do not strictly apply to sexual predator hearings:
 "Evid.R. 101(C) excepts application of the Rules of Evidence, including the hearsay rule, from certain proceedings, such as miscellaneous criminal proceedings. Among those listed as specifically excepted from the Rules of Evidence are proceedings for extradition or rendition of fugitives; sentencing; granting or revoking probation; issuance of warrants for arrest, criminal summonses, and search warrants; and proceedings with respect to bail or otherwise. Evid.R. 101(C). A sexual predator determination hearing is similar to sentencing or probation hearings where it is well settled that the Rules of Evidence do not strictly apply. A determination hearing does not occur until after the offender has been convicted of the underlying offense. Further, the determination hearing is intended to determine the offender's status, not to determine the guilt or innocence of the offender. Accordingly, we hold the Ohio Rules of Evidence do not strictly apply to sexual predator hearings. Thus, reliable hearsay, such as a presentence investigation report, may be relied upon by the trial judge. (Emphasis added.) Cook at 425. See, also, State v. King (Dec. 29, 2000), Geauga App. No. 99-G-2237, unreported, at 3, 2001 WL 20720, at 3; State v. Wade
(Dec. 29, 2000), Trumbull App. No. 99-T-0061, unreported, 2001 WL 20799. At 5.
 In applying the above to the instant case, we determine that any error in admitting unauthenticated documents that otherwise appear reliable and trustworthy does not rise to the level of plain error.[3] Appellant does not contend that the documents were untrustworthy or inaccurate copies of the original. Nor does he suggest that the result would have been different had the documents been properly authenticated. Rather, appellant merely suggests that the state did not meet the procedural requirement of authenticating the documents when they were submitted into evidence.
While the trial court may have technically erred in considering unauthenticated documents, we conclude that such does not constitute reversible error when there is nothing in the record to indicate that the documents are untrue or unreliable copies of the original. See, e.g.,Internatl. Bhd. of Electrical Workers v. Smith (1992), 76 Ohio App.3d 652,660; In re Foreclosure of Liens (Feb. 9, 2000), Harrison App. No. 96-489-CA, unreported, 2000 WL 184256, at 2-3. See, also, In re Schaffer
(1995), 101 Ohio App.3d 620, 623-624 (holding that the failure to object to a lack of authentication of evidence may constitute invited error).
Appellant also argues that he did not have an opportunity to cross-examine the authors of the documents to challenge the accuracy of the information contained therein in violation of his constitutional rights to due process.
The procedural requirements for a sexual predator hearing are set forth in R.C. 2950.09(B)(1), which provides:
 "* * * At the hearing, the offender and the prosecutor shall have the opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses regarding the determination as to whether the offender is a sexual predator. The offender shall have the right to be represented by counsel and, if indigent, the right to have counsel appointed to represent the offender." (Emphasis added.)
 Thus, "the offender has the opportunity to attack evidence that contains statements not subject to cross-examination, has the opportunity to call his or her own witnesses, present his or he own evidence, and counter any erroneous information presented by the state." State v. Bailey (July 15, 1999), Franklin App. No. 98AP-1132, unreported, 1999 WL 553830.
Here, except for the victim impact statement, appellant admitted during the sexual predator hearing that he had seen the police report, presentence investigation report, and psychological report.[4] Thus, appellant had the opportunity to attack the contents of these documents not subject to cross-examination by furnishing his own evidence or presenting his own experts and/or witnesses, including himself, and those people who produced the documentary evidence. Yet, appellant failed to do so, and his rights to cross-examine and confront witnesses were not violated. See, e.g., State v. Mullins (Apr. 12, 2001), Franklin App. Nos. 00AP-775 and 00AP-776, unreported, 2001 WL 360174, at 2; State v.McFadden (Oct. 6, 1999), Summit App. No. 19065, unreported, 1999 WL 812935, at 2; Bailey, supra; State v. Baughman (May 4, 1999), Franklin App. No. 98AP-929, unreported, 1999 WL 290704, at 3; State v. Hargis
(Feb. 11, 1999), Cuyahoga App. No. 72540, unreported, 1999 WL 84058, at 1.
Although not raised as an issue on appeal, we take notice of the fact that appellant did not have access to the contents of the victim impact statement.[5] We are mindful that R.C. 2947.051(C) states a victim impact statement is confidential and is not a public record. However, "[i]t is within the trial court's discretion whether to make * * * a victim impact statement available to the defendant." State v. Bayless
(1982), 4 Ohio App.3d 301, syllabus; State v. Whitmire (Dec. 9, 1988), Lake App. No. 12-068, unreported, 1988 Ohio App. LEXIS 4867, at 6. See, also, R.C. 2947.051(C) (stating that "the court may furnish copies of the [victim impact] statement to both the defendant or the defendant's counsel and the prosecuting attorney.").
The purpose of the victim impact statement is to apprise the trial court of the "economic loss suffered by the victim * * * [and] identify any physical injury[,] * * * any change in the victim's personal welfare or familial relationship * * * and any psychological impact experienced by the victim or the victim's family as a result of the offense * * *." R.C. 2947.051(B). As previously mentioned, the victim prepared a statement describing the events of the crime, which was consistent with the statement made in the police report.
However, the victim and her mother also submitted a letter to the trial court explaining how the rape has affected their lives. These statements were not otherwise reflected in the record, and appellant was not given access to its content. Despite that fact, appellant did not suffer prejudice therefrom.
It is evident from the trial court's judgment entry that while the court considered the victim impact statement, the facts ultimately relied upon by the trial court were otherwise reflected in the police report, psychological evaluation and presentence investigation report to which appellant had access. As such, the victim impact statement could not have had a significant impact on the trial court's ultimate decision to label appellant a sexual predator. Nor did the victim impact statement contain material information that was not otherwise reflected in the record. Accordingly, under these particular facts, plain error did not occur when appellant was not provided an opportunity to review this particular victim impact statement.
Furthermore, as noted above, the Supreme Court in Cook, supra, found that pursuant to Evid.R. 101(C), the rules of evidence do not strictly apply in a sexual predator hearing. However, that does not mean that the rules of evidence do not apply in an appropriate degree. Rather, they apply with less formality as long as there is some indicia of trustworthiness. Therefore, reliable hearsay, such as a presentence investigation report, victim impact statement, or a forensic report prepared by a psychologist in determining whether an offender is a sexual predator, normally could be relied upon by the trial court. Cook at 425;King at 3; State v. Southerland (Dec. 30, 1999), Butler App. No. CA99-01-013, unreported, 1999 WL 1279304, at 3. By analogy, a police report could be relied upon as well if the court found there to be an indicia of reliability. In contrast, a victim impact statement may contain much information that is materially prejudicial, with little to support its reliability. However, in the instant matter, the statements made in the victim impact statement were consistent with the statements made in the police report.
In summation, the evidence presented at the sexual predator hearing, to-wit: the police report, the presentence investigation report, the psychological evaluation, and the victim impact statements, fall within the category of reliable hearsay. There is nothing in the record before this court to raise suspicion with respect to the reliability of these documents.
In the second issue presented under the second assignment of error, appellant claims that the trial court's sexual predator determination was against the manifest weight of the evidence. According to appellant, the state did not present clear and convincing evidence to show that he was likely to commit a sexually oriented offense in the future.
A trial court's sexual predator determination will not be reversed by an appellate court unless the manifest weight of the evidence fails to support the trial court's decision. Cook at 426. As such, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and "`determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v.Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175.
R.C. 2950.01(E) defines a "sexual predator" as a person who: (1) has been convicted of or pleaded guilty to committing a sexually oriented offense; and (2) is likely to engage in the future in one or more sexually oriented offenses. In the instant matter, appellant pleaded guilty to one count of rape. The offense of rape qualifies as a "sexually oriented offense" under R.C. 2950.01(D)(1). Accordingly, appellant indisputably meets the first prong of the "sexual predator" definition. Appellant, however, challenges the trial court's finding on the second prong; i.e., that he is likely to commit a sexually oriented offense in the future.
In making a determination as to whether a defendant is a sexual predator, the trial court must state which factors under R.C.2950.09(B)(2)(a)-(j) it found to support its determination. State v.Strickland (Dec. 22, 2000), Lake App. No. 98-L-013, unreported, 2000 WL 1876587, at 2. These factors include: (1) the offender's age; (2) the offender's prior criminal record; (3) the age of the victim; (4) whether the sexually oriented offense for which sentence was imposed involved multiple victims; (5) whether the offender used drugs or alcohol to impair the victim or to prevent the victim from resisting; (6) whether the offender has participated in available programs for sexual offenders; (7) any mental illness or mental disability of the offender; (8) the nature of the offender's conduct and whether that conduct was part of a demonstrated pattern of abuse; (9) whether the offender displayed cruelty during the commission of the crime; and (10) any additional behavioral characteristics that contributed to the offender's conduct.
In fact, a trial court may find an offender to be a sexual predator "even if only one or two statutory factors are present, so long as the totality of the relevant circumstances provides clear and convincing evidence that the offender is likely to commit a future sexually-oriented offense." (Emphasis added.) State v. Clutter (Jan. 28, 2000), Washington App. No. 99CA19, unreported, 2000 WL 134730, at 3. "While a trial court has no specific obligation to delineate the underlying reasons why it found certain factors were applicable, it is required to reference the relevant factors either in its judgment entry or on the record during the `sexual predator' hearing." Strickland at 2.
Further, in order for the trial court to adjudicate the offender as a sexual predator, there must be clear and convincing evidence that the offender is a sexual predator. R.C. 2950.09(B)(3). "[T]he clear-and-convincing-evidence standard require[s] the state to present evidence that would give the court a firm belief or conviction that [a] defendant [is] likely to commit another sexually oriented offense in the future." Williams at 533, quoting State v. Ward (1999),130 Ohio App.3d 551, 569.
In its decision, the trial court relied on the following factors to adjudicate appellant to be a sexual predator:
 "[1.] The defendant is thirty-one (31) years of age; thirty (30) years of age at the time of the offense;
"[2.] The defendant has no prior felony record;
 "[3.] The victim of the sexually oriented offense was twelve (12) years of age at the time of the crime;
 "[4.] The defendant has been diagnosed with mental disabilities as set forth in the psychiatric evaluation prepared and submitted by the Lake County Psychiatric Clinic;
 "[5.] That the nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context was violent and involved forcible sexual conduct upon the minor victim;
 "[6.] The Court finds a lack of remorse of [sic] the part of the defendant."
 A review of the record shows that the victim was twelve years old at the time of the rape, and was apparently an acquaintance of appellant. According to the police version contained in the presentence investigation report, the victim was at the home of a family friend when appellant came into the residence. While appellant and the victim spoke in an office, he became loud and violent, and ordered the victim to lay on the floor. Appellant then took her shorts and underpants off and raped the victim.
When questioned by officials at the probation department during the presentence interview, appellant relayed an entirely different scenario of events. According to appellant, he and the victim were playfully wrestling in the office for about a half an hour. Appellant then claimed that the victim "wanted it" and told him "let's do it." Appellant further insisted that the sexual act between him and the victim was consensual in nature, and that he did not use any force or make physical threats against the victim.
Even during the psychological evaluation, appellant maintained that the victim was the aggressor. While appellant admitted that he believed the victim was only fifteen or sixteen years old, he failed to consider the consequences of his behavior.
The psychological evaluation also reported that in 1987, appellant was admitted into the Cleveland Psychiatric Institute ("the Institute") for fire setting behavior and making false phone calls to the fire department. At the time of this hospitalization, appellant was twenty years old. The records from the institute indicated that appellant sought immediate gratification of his needs, and was diagnosed with atypical impulse control disorder, mild mental retardation, and mixed personality disorder.
Moreover, appellant's "self-reporting cannot be relied upon in terms of obtaining accurate information about his sexual orientation or sexual fantasies. For example, he denie[d] ever having sexual thoughts about the alleged victim of the crime * * *." As a result, the expert performing the psychological evaluation was unable to make an assessment or prediction regarding appellant's future inappropriate sexual behavior.
After having reviewed the record, we determine that clear and convincing evidence was presented to support the trial court's determination that appellant was a sexual predator. The young age of the victim, combined with appellant's acquaintance with the victim, the violent and forcible nature of the sexual conduct, appellant being "apt to respond to impulses[,]" the lack of genuine remorse, appellant's belief that the victim was the aggressor and "wanted it," and appellant's failure to consider the consequences of his behavior all demonstrate his propensity to engage in such acts in the future.
For these reasons, we conclude that the trial court properly adjudicated appellant to be a sexual predator. Accordingly, appellant's second assignment of error is not well-taken.
In the final assignment of error, appellant raises several different challenges to the constitutionality of R.C. 2967.11, Ohio's bad-time statute. The crux of appellant's argument is that he should not be subjected to possible imposition of bad time as it would violate many of his constitutional rights.[6]
As to this point, the Supreme Court of Ohio has already fully considered the merits of appellant's arguments. In State ex rel. Bray v.Russell (2000), 89 Ohio St.3d 132,135-136, the court held that R.C. 2967.11
is unconstitutional because the parole board's imposition of additional jail time for the commission of a crime in prison clearly violates the separation of powers doctrine. See, also, State v. Frederick (July 28, 2000), Lake App. No. 98-L-015, unreported, 2000 WL 1041456; State v.Henton (July 28, 2000), Lake App. No. 97-L-232, unreported, 2000 Ohio App. LEXIS 3404; White v. Konteh (Mar. 23, 1999), Trumbull App. No. 99-T-0020, unreported, 1999 Ohio App. LEXIS 1230.
In light of the foregoing, the trial court's reference to bad time in the sentencing judgment was improper. Accordingly, appellant's third assignment of error is meritorious to this extent.[7]
Additionally, under the third assignment of error, appellant makes several arguments challenging the constitutionality of R.C. 2967.28, Ohio's post-release control statute.[8] We will address each argument in turn.
First, appellant claims that R.C. 2967.28 impinges upon his fundamental right to due process of law. Although appellant argues in detail how R.C. 2967.11 violates due process, he makes no attempt to provide a legal explanation to support his contention that R.C. 2967.28 denies him due process of law. App.R. 12(A)(2) permits this court to disregard issues not argued in the brief.[9] Nevertheless, in the interest of justice, we will consider appellant's argument that R.C. 2967.28 violates his right to procedural due process.
R.C. 2967.28(E)(5)(d) "[e]nsure[s] procedural due process" by providing the following rights to an alleged violator of probation: (1) right to a hearing; (2) the right to receive prior written notice of the hearing setting forth the time, place, and specific alleged violations; (3) the right to testify and present evidence; (4) the right to confront and cross-examine adverse witnesses; (5) the right to review all evidence presented against the release; (6) the right to counsel; and (7) the right to a written transcript of the proceedings. Ohio Adm. Code5120:1-1-43(J)(1)-(2).
Further, a review of recent case law indicates that the Supreme Court of Ohio has already considered appellant's argument. In Woods, supra, the court rejected the argument that R.C. 2967.28 is unconstitutional on the basis that it violates procedural due process.[10] See, also, Mosley at 518; Hopkins at 2; Reaves at 3; Ward at 1. Accordingly, appellant's constitutional challenge is without merit.
In light of our determination that R.C. 2967.28 affords a post-release control violator adequate procedural due process protections, appellant's remaining arguments that the statute violates the equal protection clause and denies him his fundamental right to a jury trial, a right a public trial, and a right to be found guilty beyond a reasonable doubt are also meritless.
Appellant's final due process challenge is that R.C. 2967.28 fails to provide him the right to counsel. To the contrary, a post-release control violator has the "right to request representation by counsel. If the releasee cannot afford to retain counsel, assistance, upon request, will be provided by the officer of the state public defender." Ohio Adm. Code5120:1-1-43(J)(2)(e). Therefore, Ohio's post-release control statute does not deprive an individual of his/her right to counsel.
In his final argument under this assignment of error, appellant maintains that the imposition of post-release control after he has served his full sentence violates his right to be free from double jeopardy. We disagree.
Although Woods was primarily concerned with whether R.C. 2967.28
violated the separation of powers doctrine and a criminal defendant's right to due process of law, the Supreme Court included dicta that is relevant to the question before this court. When comparing the prior system of parole with the current system of post-release control, the Court noted that the imposition of post-release control is part of the original judicially imposed sentence. Woods at 512. Put another way, when a criminal defendant is sentenced to a term of post-release control, he or she is not being given additional punishment despite the fact that it does have significant restrictions; rather, post-release control is part and parcel of the original sentence.
However, in State v. Martello (Apr. 20, 2001), Ashtabula App. No. 2000-A-0026, unreported, 2001 WL 409508, at 3, we held that "when a defendant is sentenced for a violation of his post-release control, and imposition of the sentence creates a situation where the defendant is forced to serve more than his original sentence, jeopardy attaches and precludes a conviction on the charge of escape." That is, when a person is sentenced to additional time in jail, that time cannot be considered a mere reinstatement of a term of his original sentence because the original sentence had already been served in its entirety. Id.
After reconsidering Woods as it relates to R.C. 2967.28 and double jeopardy, we conclude that the underlying logic of Martello was erroneous and should, therefore, be overturned. As we noted above, the Supreme Court has determined that post-release control is part of the original sentence. As such, the violation of a condition of post-release control, and any subsequent sanctions, is part of the punishment for the original criminal conduct. Accordingly, given that post-release control is an element of the criminal defendant's original sentence, it follows that punishment stemming from a post-release control violation would never result in double jeopardy.[11]
Based on the foregoing analysis, the judgment of the trial court is affirmed in part, reversed in part, and the matter is remanded for proceedings consistent with this opinion. Specifically, the trial court is instructed to vacate its prior sentencing judgment and issue a new judgment which does not contain any reference to the imposition of bad time. In all other respects, the judgment of the trial court is affirmed.
FORD, P.J., NADER, J., concur.
[1] Although the state recommended a three year prison sentence, the trial court exceeded the state's recommendation.
[2] Both Evid.R. 901 and 902 set forth a nonexclusive list of examples to authenticate items being admitted into evidence.
[3] As an aside, we note that in accordance with R.C. 2947.051 and 2947.06, a trial court is permitted to request a victim impact statement, presentence report, and a psychological evaluation for use in sentencing. However, it does not necessarily follow that the use of a victim impact statement in a sexual predator classification hearing is always relevant to the determination to be made there.
[4] As will be noted later in this opinion, the contents of the victim impact statement concerning the events of the crime were also contained and consistent with the statements made in the police report.
[5] During the sexual predator hearing, appellant did not object to the admission of the victim impact statement, nor did he request to review the statement or have the trial court conduct an in camera inspection. As such, appellant waived this issue absent plain error.
[6] As part of the sentencing judgment, the trial court advised appellant that he was "subject to administrative control as provided by R.C. 2967.11."
[7] While appellant argued that R.C. 2967.11 violated the doctrine of the separation of powers, he did not present this argument with respect to R.C. 2967.28. Nevertheless, we are mindful that in Woods v. Telb
(2000), 89 Ohio St.3d 504, paragraph one of the syllabus, the Supreme Court of Ohio found that "R.C. 2967.28 does not violate the separation of powers doctrine * * * of the United States or Ohio Constitutions." See, also, State ex rel. Mosley v. Nichols (2001), 90 Ohio St.3d 517,518.
[8] As an aside, we note that the trial court advised appellant that he was subject to post-release control after release from prison. A review of R.C. 2967.28(B)(1) confirms that a five year mandatory post-release control is imposed on those convicted of a first-degree felony or a felony sex offense. Given that appellant was subject to mandatory post-release control in the instant matter, he had standing immediately upon sentencing to challenge the constitutionality of R.C. 2967.28. SeeState v. Morris (Aug. 18, 2000), Hamilton App. No. 000027, unreported, 2, 2000 WL 1161995, at 2; State v. Spikes (Sept. 4, 1998), Lake App. No. 97-L-158, unreported, 1998 WL 637852, at 3, fn. 3.
[9] App.R. 12(A)(2) reads as follows:
 "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."
[10] We note that in State v. Hopkins (Nov. 27, 2000), Stark App. Nos. 2000CA00053 and 2000CA00054, unreported, 2000 WL 1751286, at 2, the Fifth Appellate District upheld the constitutionality of R.C. 2967.28 in the face of a substantive due process challenge by relying on the authority of Woods and State v. Jones (2000), 89 Ohio St.3d 519. See, also, Statev. Reaves (Dec. 15, 2000), Richland App. No. 00-CA-42, unreported, 2000 Ohio App., LEXIS 5997, at 3. State v. Ward (Dec. 11, 2000), Fairfield App. No. 00CA37, unreported, 2000 Ohio App. LEXIS 5810, at 1.
[11] We would note that on September 26, 2001, the Supreme Court of Ohio accepted Martello for review.