**LEAHIGH et, Plaintiffs, v. BEYER et, Defendants.**

Common Pleas Court, Butler County.

No. 69734.   Decided July 13, 1953.

Martin A. Coyle, Hamilton, John A. Lloyd, Jr., Cincinnati, for plaintiffs.
Sol Goodman, Cincinnati, for defendants.

70

## OPINION

By CRAMER, J.

This cause is before the court upon the motion of the defendants for an order dissolving the temporary restraining order heretofore issued and for judgment in their favor on the pleadings. In view of the fact that a ruling on the latter portion of the motion would probably be dispositive of the former, we proceed to rule first upon the motion for judgment upon the pleadings.

The petition discloses plaintiffs on behalf of themselves and other members of Local Union No. 233 UAW-CIO—hereinafter referred to as the local—seek to enjoin a run-off election based upon the results of an election held on May 12, 1953 for the election of officers of the local. The plaintiffs claim that the election of May 12, 1953 was illegally conducted and not in accordance with the international constitution and the by-laws of the local.

They allege they protested the manner in which said election was conducted to the membership and also that they sought information from the president of the local and the regional director for "procedure to be followed in perfecting a protest to said election held on May 12, 1953."

It is asserted that the officers and president of the local refused to furnish the information so requested.

They then proceed to set out that they requested the chairman of the local committee and the regional director that the scheduled run-off election to be held May 27-28. 1953 be "held in abeyance until such time as the plaintiffs' protest of the election of May 12, 1953 could be finally and conclusively decided by the proper legal bodies and that said Beyer and Ross have flatly refused to comply * * *."

It is then asserted that the plaintiffs have no legal remedy and that by virtue of their protest filed they manifested "their intentions to exhaust all available remedies to contest the results of said election of May 12, 1953."

They seek to permanently enjoin the holding of the run-off election "until such time as the proper bodies have made a final settlement and adjudication of all the issues contained in the protest of the original election held May 12, 1953."

A temporary restraining order was allowed enjoining the holding of the run-off election while it was in the process of being conducted.

The answer of the defendants denies that either the original election of May 12, or the run-off election was in any way improper but rather both were in accordance with the international constitution and the rules and regulations of the local.

The answer further alleges that the plaintiffs filed a protest to the election at a meeting of the membership and a majority in attendance voted against the protest. That under the constitution of the international the general meeting of the local union members "shall be the highest authority for handling problems within the manufacturing establishment."

The defendants then set out Article 30, Sections 3 and 6 of the international constitution, which provide for the manner and time in which any member can appeal from "the action, decision or penalty of his subordinate body."

There are further alleged, the provisions of the constitution which prohibit a member or a subordinate body from appealing to a civil court for redress until "he or it has exhausted his or its right of appeal under the laws of this international union."

It is asserted that the plaintiffs failed to take such appeal provided in Article 30, Section 3, and have failed to exhaust their remedies within the international union.

To that answer plaintiffs filed an amended reply which, after generally and specifically denying all the allegations of the answer which are not admissions of the allegations of the petition, asserts that the provisions of the international constitution quoted in the answer are inapplicable to the protesting of local union elections. They further claim that even though applicable to the protesting of such elections the constitution makes no provision for a stay of a run-off election as sought by plaintiffs. They then allege that they have taken every step to conform to the procedure, insofar as possible respecting protesting a local election in the event it be determined that the constitution does set forth such a procedure.

It is further asserted that in the event Article 30 of the international constitution is applicable to the protesting of local elections, Section 2 of that article which requires that the decision of the lower tribunal must be complied with before the right of appeal can be accepted by the next tribunal in authority denies them the opportunity to obtain the stay of the run-off election.

The plaintiffs, at the outset, insist that a judgment on the pleadings in favor of the defendants is unavailable to them since the pleadings raise issues of fact and not of law.

True it is, that a judgment on the pleadings may be given only when taking all the averments of the pleadings as they stand, they present merely a question of law.

Is that the situation here presented?

An examination of the pleadings reveals that the only issue

of fact raised by them is whether the original election was or was not legal and in accordance with the constitution, and rules and regulations, and whether the run-off election was being conducted regularly or would be held in conformity to or in violation of the international constitution and the rules of the local.

These issues of fact, in our opinion, are inconsequential and may well go undetermined or even found adversely to or in favor of plaintiffs or defendants without in the slightest affecting the legal question squarely raised by the pleadings.

Those questions are—since the constitutional provisions as pleaded in the answer are admitted (it is only their applicability which is disputed)—as follows:

(1) Does the constitution, particularly those portions of Article 30, set out in the answer, provide a remedy—set up the procedure for—protesting local union elections and for appeal?

(2) If so, does plaintiffs' failure to avail themselves of and exhaust such remedies and procedure preclude a court from granting them the relief prayed for?

While it was asserted in oral argument that the national executive board has interpreted Article 30 as being applicable to election protests, the pleadings do not disclose that, and even if they did, we cannot be bound nor guided by such interpretation.

It is our opinion that on their face, the portions of Article 30 of the national constitution quoted in the answer are applicable to and provide for protesting local union elections and the procedural steps to be taken on appeal from the decision of a subordinate body on such questions.

This conclusion comes as a result of applying the usual and well settled rules of constitutional and statutory construction.

It is a well recognized principle of law that members of a union, by adopting a constitution and by-laws and providing regulations for settling their own disputes, and by establishing their own tribunals of original and appellate jurisdiction, become bound thereby and will be required to avail themselves of and to exhaust all internal remedies provided by such constitution and by-laws before resorting to courts for relief.

See **National Union v. Owens, 119 Oh St 94; Gallagher v. Harrison, 86 Ohio Ap 73, 40 O. O. 494.**

In the annotations found in Volume 168 A. L. R., at page 1463, the following is quoted with approval:

"So that only upon the clearest kind of showing, either that the constitution and rules are violated by the decisions of the tribunals set up by them (referring to voluntary associations such as unions) or that the remedies provided by the parties in their agreements for appeal from, or review of, the deci-

sions of their own constitution the tribunals are non-existant or unreasonable, should the courts permit their jurisdiction to be invoked."

In the case of Reigel v. Harrison, 157 Fed. (2d), 140, at page 146, Judge Martin, Circuit Judge, made the following observation in the course of his opinion:

"As found by the district court, Reigel has not exhausted his remedies within the Brotherhood; and this being true, he is not entitled to maintain this court action. The decision of the district court was in conformity with the controlling law—that of Ohio, which is consistent with the general law."

That case holds that its decision is in conformity also with a number of Ohio cases therein, such as **Meyer v. Jenkins, 63 Oh St, 101**, 4th syllabus thereof; **Hahn v. Elliott, 28 Abs 353;** also, **Boblitt v. Railway Co., 73 Oh Ap 339, 28 O. O. 65**, Mace v. Carpenters, etc., 31 O. N. P., N. S. 17.

The case of Meyers v. Bethlehem Corporation, 303 U. S., 41, is likewise cited.

The syllabus in the Mace case, supra, is as follows:

"Membership in a trade union is in the nature of a contract, under which each member agrees to be governed by its constitution and rules; and where, under such rules, complaints of an undividual member against injustices of the association officers are required to be tried before a trial board of the association and an appeal taken within the association before recourse to the civil courts, the latter tribunals are without jurisdiction in such cases until the remedies afforded by the constitution of the association have been exhausted."

In the course of Judge Darby's opinion in the Mace case, he quotes the following from the case of Hickey v. Baine, 195 Mass., 446, which was an action in mandamus for the purpose of securing possession of an office in the union:

"The rights of all the members of this voluntary association must be settled according to the provisions of the constitution which they have adopted. Accordingly before these petitioners can invoke the aid of court to secure them in the offices to which they severally claim to have been elected, it must be shown that they have exhausted the remedies available to them within the association, and according to its rules."

"* * * If the action of the board was wrong, whether because they had no jurisdiction of the question or because they took an erroneous view of either the law or the facts, there was a further remedy open to the petitioners under the constitution by appeal under Section 106 to a convention to be held under Section 108. It is impossible to read this constitution without seeing plainly that it was

intended and purported to supply a full system of government by which the rights of all its members and rights and duties of all its officers among themselves should be determined and regulated under the management and control of the general executive board, which according to Section 8 is to decide all questions of usage wherein the constitution is silent, and with a final and complete control in convention to be held subject to the desire of the majority of the local union * * *. In our opinion, according to the decisions above cited, it was the duty of the petitioners to exhaust their remedies by appeal to such a convention before coming into the courts."

It does not appear from the pleadings that the remedies provided under the constitution will be fruitless or that the appeal will not be treated fairly by the appellate tribunals.

Plaintiffs apparently do not too seriously contend that the foregoing is not the law but insist that they are entitled to relief here because the constitution provides no relief for them since there is no provision for staying a run-off election pending the final determination of the validity of the election upon which the run-off is based.

Furthermore, under the constitution the decision of the membership—rejecting the protest—must be complied with before the right to appeal can be accepted by the next tribunal.

Therefore, it is claimed that resorting to the internal remedies and following the constitutional procedure would be futile and useless.

They claim they would have to abide by the results of an illegal election while the appeal was being processed, which might easily mean that the newly and illegally elected officers would serve their full terms in office before the appeal would be finally determined.

Such observations, in our opinion, are neither tenable nor afford a basis for granting plaintiffs relief in a court of equity for the following reasons:

(1) No individual property rights of any of the plaintiffs are in any manner affected or involved in the action of the defendants sought to be relieved against.

Judge Skeel in the case of **Findlay v. Duffy, 88 Oh Ap 159, 43 O. O. 451,** in his opinion stated:

"The right to seek the power of injunctive relief in a court of equity cannot be invoked unless and until it is made to appear that a property right has been invaded for which there is no other adequate remedy afforded."

(2) Membership in a union is in the nature of a contract

under which each member agrees to be bound by its constitution and rules. Here the plaintiffs as members of this local agreed to the provisions now complained of. This they are not permitted to do.

(3) The procedure for appeals provided in the constitution —the requirement therein that the appellant abide by the decision appealed from—the failure to provide therein for a stay of the ruling from which the appeal is taken—are not violative of "due process."

"The right of appeal or review is not essential to due process provided due process has already been accorded in the tribunal of first instance."

See 12 Am. Jur., Section 638, pages 327-328; see, also, **State of Ohio v. Edwards, 157 Oh St, page 175, 47 O. O. 122.**

Therefore, even if the constitution here involved did not provide for any appeal from the decision of the membership affirming or rejecting a protest of an election, no valid objection could be made to the constitution on the ground that it violated due process of law. That being true plaintiffs cannot be heard to complain against the provisions of a constitution which determine and prescribe the manner in which such an appeal is to be taken. Nor that the constitution fails to make provision for staying of proceedings pending an appeal.

The pleadings do not state, nor can it be inferred therefrom that the internal remedies provided for in the constitution fail to accord to the members bound thereby "substantial or practical justice" or deny them the "protection of their democratic processes."

Finding, as we do, from the pleadings that plaintiffs have failed to exhaust all remedies within the union and that such remedies are neither in violation of their fundamental rights, nor constitute a denial of due process of law, the defendants are entitled to a judgment in their favor upon such pleadings. Dissolution of the temporary restraining order heretofore issued therefore follows.