CAMPBELL, APPELLEE, *v.* BROTHERHOOD OF RAILROAD TRAINMEN, APPELLANT.

[Cite as Campbell v. Brotherhood of Rd. Trainmen, 4 Ohio App. 2d 81.]

(No. 27187—Decided October 28, 1965.)

*Mr. Stephen J. Knerly*, for appellee.
*Messrs. Miller & Miller*, for appellant.

ARTL, J. This is an appeal on questions of law taken by the Brotherhood of Railroad Trainmen who, as defendant, sustained an adverse verdict in the Court of Common Pleas of Cuyahoga County.

The pertinent facts follow. Defendant is an unincorporated voluntary association of approximately 200,000 members, organized and functioning as a labor union.

The plaintiff, Francis M. Campbell, was a member in good standing of the defendant organization at all times between his initiation in 1941 and his death in 1962. At the time of his application for union membership, he made the following agreement:

"If admitted, I agree to be bound by and I promise a strict compliance with all the laws, rules and regulations of the Brotherhood of Railroad Trainmen now in force, or as they may be hereafter altered or amended."

Also, in 1946 plaintiff became engaged as an employee of the defendant Brotherhood.

In April 1954, an altercation and alleged assault and battery took place between the plaintiff and the vice-president of the defendant union during and subsequent to a union meeting. As a result of this incident, plaintiff filed suit against the vice-president, seeking to recover for personal injuries allegedly resulting from the controversy.

In June 1954, plaintiff experienced a heart attack which necessitated medical treatment and hospitalization. Due to his cardiac condition, he was unable to continue as an employee of the Brotherhood. Plaintiff contends that he was granted leaves of absence from his employment at this time, while de-

fendant claims that plaintiff abandoned his employment at this time.

Almost two years later, on April 19, 1956, plaintiff's health had improved to the extent that he felt capable and desirous of resuming his employment with the Brotherhood. He was instructed to make his request to the President of the Brotherhood.

On June 27, 1956, the president denied such request in a letter to plaintiff, basing his decision on the ground that plaintiff was in continuous violation of Section 128 of the Brotherhood Constitution. Section 128 provides, in part:

"It is the duty of every member * * * to yield a cheerful compliance to all laws, rules, and regulations of the Brotherhood; * * * to be courteous to visiting members; * * * and never to speak falsely or maliciously of a member or vilify his character."

The president's letter to plaintiff stated that at the April 1954 meeting "* * * you violated this provision by failing to yield a cheerful compliance to the rules and regulations of the Brotherhood and by being discourteous to visiting members" and that "* * * you have instituted a lawsuit against a member, without good and sufficient cause therefor, and that you are thereby speaking falsely and maliciously of a member and vilifying his character."

In November 1957, plaintiff's action against the vice-president was settled, and on December 2, 1957, plaintiff was restored to his union employment. It is alleged by the Brotherhood that the consideration for such settlement was the re-employment of plaintiff by the Brotherhood and that by the settlement all claims were settled as against the defendant vice-president and the defendant Brotherhood.

Subsequent to plaintiff's re-employment, he received seven general pay raises. Another pay raise, one which plaintiff did not receive, was given on April 1, 1960, to a number of Brotherhood employees for additional duties.

In October 1960, plaintiff filed a petition against the Brotherhood, praying for $11,838.47 as damages claimed to be due him as lost earnings as the result of (1) the alleged suspension during the April 19, 1956, to December 2, 1957, period, (2) the failure of defendant to grant plaintiff the April 1, 1960,

pay raise, and (3) the failure of defendant to promote the plaintiff to a higher position within the Brotherhood.

To the petition defendant filed its demurrer on the ground that the petition did not state a cause of action for the reason that it did not allege that plaintiff had exhausted his remedies within the defendant's organization prior to bringing suit. The court sustained defendant's demurrer, granting plaintiff leave to amend.

In March 1961, plaintiff filed his amended petition, substantially the same as the original petition, except for the added allegation:

"* * * that any attempt on the part of the plaintiff to seek relief for the matters set forth in this Amended Petition within the Brotherhood are and would be futile, illusory and useless, and would not accord to plaintiff substantial or practical justice."

Defendant's demurrer to the amended petition was overruled.

Prior to the time this cause of action came on for trial, Francis M. Campbell died and Mary Campbell, executrix of the deceased's estate, was substituted as party plaintiff.

The case was tried to a jury and resulted in a verdict in favor of plaintiff and a judgment thereon on September 23, 1964, in the sum of $4,500 and costs against the defendant. It is from this judgment that the defendant appeals.

In the interest of brevity, the appellant will be designated as the Brotherhood; the appellee as the plaintiff. The Brotherhood urges eight assignments of error. It is clear to us, however, that the heart of the case revolves around the basic question whether plaintiff could bring and maintain this action without first having exhausted his remedies within the organization of which he was a member, or, in the alternative, did he prove his allegation that any attempt to exhaust his remedies within the association would be useless, illusory, and futile. This is the principal foundation of the Brotherhood's assignments of error numbers two, three, four and five.

The plaintiff, in turn, recognizes that he did not exhaust his remedies within the organization but argues that it was not necessary to do so because (1) such is not the law, (2) he has shown by evidence that any such attempt would be useless, illu-

sory and futile, and (3) the Brotherhood itself violated certain provisions of its constitution applicable to the situation out of which this controversy arose, which prevented plaintiff from appealing.

The plaintiff, in support of his position that it was not necessary for him to exhaust his remedies within the organization before bringing an action in a court of law for damages has cited us to a number of cases. *Local Union No. 65* v. *Nalty* (C. C. A. 6, 1925), 7 F. 2d 100; *Grand International Brotherhood* v. *Green* (1923), 210 Ala. 496, 98 So. 569; *Rozak* v. *Favorito* (1948), 48 Ohio Law Abs. 524; *Pfoh* v. *Whitney* (1945), 43 Ohio Law Abs. 417; *International Assn. of Machinists* v. *Gonzales* (1958), 356 U. S. 617, 2 L. Ed. 2d 1018, 78 S. Ct. 923; *Armstrong* v. *Duffy* (1951), 90 Ohio App. 233; *Crossen* v. *Duffy* (1951), 90 Ohio App. 252.

The key Ohio case concerning the "exhaustion" principle is *International Union of Steam & Operating Engineers* v. *Owens* (1928), 119 Ohio St. 94, in which the court states at page 98:

"It is a well-settled principle of law, recognized by the courts of this state and by the courts of other states, that the members of a fraternal association by adopting a constitution and by-laws and providing reasonable rules and regulations for settling their own disputes, and by establishing their own tribunals of original, intermediate, and appellate jurisdiction, become bound thereby, provided such constitution, by-laws, rules, and regulations do not contravene the laws of the state. It is also well settled that the members of such an association must conform to the reasonable rules and regulations thereof and *must exhaust all remedies within the association* and before such regularly constituted tribunals." (Emphasis added.)

Ohio courts have consistently followed the *Owens decision*. *Gallagher* v. *Harrison* (1949), 86 Ohio App. 73; *Seligman* v. *Toledo Moving Pictures Operators Union* (1947), 88 Ohio App. 137; *Leahigh* v. *Beyer* (1953), 67 Ohio Law Abs. 69; *Mace* v. *Carpenters & Joiners of America* (1933), 31 N. P. (N. S.) 17; *Hagesfeld* v. *Campbell* (1960), 85 Ohio Law Abs. 61; *Reigel* v. *Harrison* (C. C. A. 6, 1946), 157 F. 2d 140.

Each of the cases which the plaintiff cites to us is distinguishable on its facts from the instant case. In all save two

of them the plaintiffs had given up all claims to membership in their respective unions prior to the time of suit. Thus, not retaining the benefits of union membership, neither were they obligated by the rules of membership, i. e., exhaustion of internal remedies before resort to the courts.

In the instant case, on the other hand, the plaintiff retained his union membership and claimed all of the accompanying benefits. He thus was bound to observe the rules of the association and exhaust the remedies within the union prior to coming into court.

Two of the cases which plaintiff advances do involve plaintiffs who were still union members at the time of suit. *Armstrong* v. *Duffy*, 90 Ohio App. 233; *Crossen* v. *Duffy*, 90 Ohio App. 252. These cases, however, concern themselves primarily with the illegality of unions imposing *ex post facto* rules on their members; the cases do recognize and recite the "exhaustion of remedies" principle.

The Brotherhood Constitution provides for a grievance-appeal period of ninety days. The only intra-union appeal plaintiff attempted to institute concerning his alleged suspension was contained in a letter which he directed to the Brotherhood president on May 10, 1960, almost four years after the alleged suspension.

As to the April 1, 1960, pay raise, there is no evidence that plaintiff qualified for the raise by performing any additional duties after his return to work. More important, plaintiff never filed a grievance with the Brotherhood in regard to the raise.

The third component of plaintiff's claimed damages—lost wages as the result of the failure of defendant to promote plaintiff to a higher position within the Brotherhood—refers to the alleged denial of plaintiff's right, based on seniority, to bid on the job of premium auditor.

By Section 28 of the Brotherhood Constitution, "seniority, ability and fitness to govern" are the criteria utilized in the filling of vacancies and the making of promotions. Plaintiff was passed over in this instance because of his physical condition and illness. Here again plaintiff failed to file a grievance with the Brotherhood.

It can readily be seen that plaintiff failed to exhaust his

remedies within the organization of which he was a member in all three matters which constitute his alleged damages: the suspension, denial of pay raise, and non-promotion.

The evidence which plaintiff advances as proof that any attempt to exhaust his remedies would be futile relates to the testimony of a former employee of the Brotherhood, one McLaughlin.

Witness McLaughlin was permitted, over objection, to relate circumstances surrounding his dismissal from the Brotherhood's employment in 1961.

We have carefully examined the record as to the testimony of witness McLaughlin, for plaintiff places great stress upon such testimony with respect to his own dismisal. In fact, in his brief he argues:

"Certainly it is pertinent in this case to show that even if the appeal rights granted by the constitution are attempted to be enforced, nothing ever materialized. The court had before it a concrete example of the futility and the uselessness of appealing. This concrete example provided probative evidence which tended to substantiate the plaintiff's claim that to seek relief within the union is futile, illusory and useless."

McLaughlin testified that written charges were served upon him and that he was given a hearing which culminated in his dismissal from the Brotherhood. He further testified that he knew that the decision to dismiss him was that of the Brotherhood president and that under the constitution he had the right to appeal such decision to the board of directors within ninety days. Within the ninety-day period he filed an appeal not with the board of directors, however, but with the president whose decision he sought to appeal. It is clear that this appeal was not in accordance with the constitution and was a nullity. It was treated as such and ignored. This accounts for the fact that no further action was taken by the Brotherhood.

It is difficult to understand how the testimony of one member in an organization consisting of approximately 200,000 members, where such member knows that he has the right to appeal his discharge to the board of directors and through his own error fails to perfect such an appeal, can be characterized by the plaintiff as "probative" evidence in support of the

proposition that to pursue his remedies as required would be futile, useless and illusory. We determine and hold that it is not.

Another reason advanced by plaintiff as a justification for bringing this action without first exhausting his intra-union remedies is that the Brotherhood itself violated Section 28(b) of the Brotherhood Constitution in that it suspended plaintiff on June 27, 1956, without at any time placing charges of any kind against him. Section 28 (b) provides, in part:

"No employee will be suspended, reprimanded, demoted, or dismissed without good and sufficient cause, and then only after the holding of a fair and impartial investigation."

It is the plaintiff's contention that the president's letter of June 27, 1956, constituted an arbitrary and capricious suspension from his employment without any charges having been made against him, without any investigation, without any trial, without any opportunity to be heard, and with the limitations period in any event having expired.

The Brotherhood specifically denies that plaintiff was suspended, reprimanded, demoted or dismissed from the Brotherhood. It points out that in May 1954 plaintiff ceased reporting for work; that for a period of almost two years nothing was heard from him; and that as far as the records of the Brotherhood were concerned plaintiff had abandoned his job.

The Brotherhood argues that when plaintiff requested re-employment he was in substance applying for his old job which he had abandoned; that the letter dated June 27, 1956, was a decision of the president completely within his prerogative under Section 9 of the constitution; that pursuant to Sections 71 and 139 of the constitution, plaintiff's recourse from the president's decision was to appeal such decision to the board of directors within ninety days from June 27, 1956; and that plaintiff's failure to do so rendered the decision of the president final as to plaintiff.

Can it be said that the president's letter of June 27, 1956, was a suspension or dismissal when it is conceded by plaintiff's brief that the evidence clearly discloses that at no time had the plaintiff's employment been terminated; that he was still being carried as an employee; that he was still being carried on the seniority roster; that even during his absence general pay raises

were added to his salary; and that he finally returned to work with his full seniority intact?

We do not subscribe or agree with plaintiff's contention that the June 27, 1956, letter constituted a dismissal because of plaintiff's conduct in April 1954. While the letter makes reference to plaintiff's conduct at the 1954 meeting, we are of the opinion that such reference does not state the true cause for the president's denial of plaintiff's reemployment.

Our view is that this was a decision of the president interpreting the provisions of the constitution, a duty imposed upon him by Section 9 of the constitution. It was his interpretation that the plaintiff's institution and maintenance of a lawsuit against the union vice-president was a course of conduct constituting a continuous violation of Section 128 of the constitution.

Being a decision of the president, such decision was appealable to the board of directors within ninety days under the constitution. Plaintiff did not perfect such an appeal.

Assignments of error three, four and five are well taken and are sustained. In view thereof, consideration of the remaining assignments of error is unnecessary.

We conclude, therefore, and hold that plaintiff could not maintain this action without first having exhausted his remedies within the union of which he was a member, for the reason that the record is devoid of any evidence to prove his allegation that any attempt to exhaust his remedies within the union would be useless, illusory and futile.

The judgment is reversed as contrary to law, and final judgment is rendered for the appellant.

*Judgment reversed.*

SILBERT, C. J., and KOVACHY, J., concur.