Melton SUMMERVILLE, Plaintiff,

v.

LOCAL 77 and American Federation of State, County and Municipal Employees, Defendants.

No. 1:03CV770.

United States District Court, M.D. North Carolina.

Feb. 24, 2005.

Melton Summerville, Durham, NC, Pro se.

Michael G. Okun, Raleigh, NC, and J. David James, Greensboro, NC, for Defendants.

### ORDER and JUDGMENT

OSTEEN, District Judge.

The court has before it this Standing Order 30 recommendation by the Magistrate Judge that Plaintiff's motion for judgment on the pleadings or for summary judgment be denied; that Defendants' motions for summary judgment be granted; and that this action be dismissed with prejudice. Plaintiff timely objected to the rec-

ommendation. Defendants responded to the objections.

The record, including the Plaintiff's objections and Defendants' responses, have been reviewed by this court, and it is the opinion of this court that the recommendation is in accord with the facts and the prevailing law. The court adopts the recommendation of the Magistrate Judge entered February 2, 2005, as its own findings and conclusions.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment on the Pleading[s] (Doc. No. 48) should be and is hereby denied.

IT IS FURTHER ORDERED that the Defendants' Motions for Summary Judgment (Doc. Nos. 58 and 62) should be and are hereby granted.

IT IS FURTHER ORDERED AND ADJUDGED that this proceeding is hereby dismissed with prejudice.

### ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

SHARP, United States Magistrate Judge.

This matter comes before the Court on several pending motions filed by the parties, including both discovery motions and dispositive motions. In accordance with 28 U.S.C. §§ 636(b)(1)(A) and (B), the Court now enters its Order regarding the discovery motions and its Recommendation regarding the dispositive motions before the Court.

### Procedural Background

On August 15, 2003, Plaintiff Melton Summerville, proceeding *pro se*, filed this civil action against Defendants Local 77 and American Federation of State, County, and Municipal Employees, AFL–CIO

("AFSCME"). Mr. Summerville later filed an Amended Complaint (Pleading No. 23) that remains the operative pleading for Plaintiff in this action. Defendants Local 77 and AFSCME filed answer,[1] and the case proceeded into a period of discovery under the auspices of the Initial Pretrial Order of July 12, 2004. (Pleading No. 35.) By that order, discovery was required to be completed by November 1, 2004.

Plaintiff's *pro se* Amended Complaint (Pleading No. 23) opens with the following preface:

> The Plaintiff is filing this amended complaint under Title I Sec, 101(a)(4) of the Labor Management Reporting and Disclosure Act and Sec, 104 of the same act. Breach of Contract under the International Constitution Article X, Sec, 12, K and Breach of Contract under Article X, Sec, 13(F), Breach of Contract under Article X, Sec, (1).

(Am. Compl. at 1.)

Mr. Summerville asserts that "defendants are also being charged with staging the October 8, 2002 trial to see the plaintiff's case and then set up a new trial after having seen the plaintiff's case which is a due process violation against the plaintiff." *Id.* He sets out twenty-two "Counts (Factual and Legal Allegations)," followed by eight "Charges," and he concludes with four "Prayers for Relief." In his "Counts," Mr. Summerville describes an October 8, 2002 trial [conducted by AFSCME upon Plaintiff's charges against Local 77] that was scheduled to be held in Durham, N.C. He says that he requested documents in advance of this trial but Defendant Local 77 did not respond. Plaintiff sought an order from the Judicial

Chair for AFSCME that these documents be produced, but the Chair found the documents to be not relevant. Plaintiff says that he wrote to challenge this finding, and the Judicial Chair thereafter directed Local 77 to turn over the requested documents. Plaintiff says he did not receive these documents by the trial date.

Mr. Summerville states that Local 77 did not appear for the October 8, 2002 trial. He alleges this to be in violation of his due process rights under the International Constitution. Plaintiff put on his case before the Judicial Chair, but the case was compromised because he had not received the documents he requested from Local 77. Plaintiff alleges that Local 77, on the advice of AFSCME, intentionally avoided appearing at the October 8 trial "to enable it to obtain a copy of the trial transcripts of the plaintiff's case to give it an unfair advantage at a subsequent trial …" (Amended Complaint, Count 7.) This also gave Local 77 an opportunity to alter documents before the subsequent trial, and this caused Plaintiff severe emotional distress.

Plaintiff alleges that Local 77 violated his rights under the International Constitution by withholding the documents that the Judicial Chair ordered produced to him. Mr. Summerville says that the October 8 trial was staged by AFSCME and that AFSCME told Local 77 not to appear and not to give Plaintiff the requested documents. He alleges that AFSCME's strategy was to call for a new trial after Plaintiff had already shown his case.

Mr. Summerville alleges that, after trial, AFSCME would not allow Plaintiff to file a charge of "Due Process Violation" based

---

1. Defendant AFSCME originally filed a motion to dismiss the complaint for insufficiency of service of process. By Orders of January 12 and February 10, 2004, however, the U.S. Marshal was directed to serve the complaint on behalf of the *pro se* Plaintiff. AFSCME subsequently filed answer to Plaintiff's Amended Complaint, and the issues were properly joined.

on Local 77's failure to produce documents. Further, Plaintiff alleges that the Judicial Chair stated that he would render a decision thirty days after receiving a transcript of the October 8 hearing. But Plaintiff also alleges that the Judicial Chair told the court reporter not to give Plaintiff a copy of the trial transcript because the Chair was going to call for a new trial.

Plaintiff alleges that Defendants violated his rights and breached their contract [the International Constitution] with him by holding a reopened trial on March 24, 2003. Plaintiff says this second trial violated Article 10, Section 18, which states, "All decisions must be rendered within 30 days unless mutually consented to by both parties." (Am. Compl., Count 17.) Plaintiff alleges that the second trial also violated Section 14 of Article XI, which states that a Judicial Panel member whose decision is appealed cannot participate in the appeal. Plaintiff says that the Judicial Chair and Local 77 conspired together to violate his rights. He characterizes the actions of the Defendants as "extreme and outrageous," causing him to suffer severe emotional distress.

Plaintiff enumerates eight separate "charges" against Defendants. These include collusion between Local 77 and AFSCME to stage the first trial in order to allow Local 77 to see Plaintiff's case. Plaintiff alleges that his rights were also violated when he did not receive a document he requested—a copy of the newly adopted articles that were going to appear in the new union contract. He says he was denied the right to file charges against Local 77 concerning the non-produced document. His rights were also violated by the convening of the reopened trial, according to Plaintiff.

For relief, Mr. Summerville requests one billion dollars in compensatory dam-

ages and two billion dollars in punitive damages. He also seeks an injunction and recovery of any attorney fees that may be incurred. (Am. Compl., "Prayers for Relief" at 7–8.)

In May 2004, this case proceeded into discovery. Some discovery disputes did arise, but most of these were eventually resolved by the parties without intervention by the Court. *See* Pleading Nos. 37, 39, 41, 42, 44, 45, 47, 51, and 54. Presently pending before the Court is Plaintiff's motion to compel discovery, filed December 6, 2004. (Pleading No. 65.) On review of that motion, the Court finds that Plaintiff did not serve the request for responses by Local 77 to written deposition questions until October 20, 2004. Under Fed.R.Civ.P. 31(a)(4), Defendant's responses to the written deposition questions could not have been due until well after the expiration of the discovery period on November 1. The discovery is therefore untimely under the provisions of LR26.1(f), which provides that written discovery must be served in a fashion so that responses are due within the prescribed discovery period. Accordingly, Plaintiff's motion to compel is **DENIED**.

Having set out the procedural history of the case and having ruled on the only discovery motion remaining before the Court, the Court now turns to the dispositive motions filed by the parties.

*Discussion*

There are three dispositive motions before the Court: Plaintiff Summerville's motion for judgment on the pleadings or for summary judgment; Local 77's motion for summary judgment; and AFSCME's motion for summary judgment. (Pleading Nos. 48, 58, and 62.) Before discussing the merits of the three motions, the Court finds it useful to set out a detailed factual

summary and, in particular, several excerpts of Plaintiff's deposition testimony. Plaintiff's *pro se* complaint does not reveal the immediate background to the "trials" before the Judicial Chair for AFSCME which he believes were unfair, but uncontested evidence in the summary judgment record shows the general nature of Plaintiff's dispute with Local 77. Plaintiff's deposition shows his side of the dispute.

Local 77 has represented a bargaining unit of service workers at Duke University ["Duke"] for over thirty years. The collective bargaining agreement between Local 77 and Duke became due to expire on June 30, 2002. Local 77 and Duke participated in negotiations prior to that date in an effort to agree upon a new collective bargaining agreement. AFSCME was not a party to the bargaining agreement and did not participate in the negotiations. Plaintiff Summerville was not a member of the negotiating team for Local 77. After a series of meetings with Duke, the negotiating team for Local 77 scheduled a meeting on June 30, 2002, for union members to decide whether or not to accept Duke's final proposal. At the meeting, members of Local 77 voted overwhelmingly to accept Duke's offer. (Pleading No. 59, Local 77's Mem., Ex. B., Michael Gibson Aff. ¶¶ 1–10.)

Plaintiff Summerville's deposition shows that he has been an employee of Duke since 1988 and has been a member of Local 77 throughout that period of time. He ran for elective office on one occasion but was not successful. By 2002, he had not attended union meetings for some time, and he did not attend any of the meetings or updates given by Local 77

during the negotiations for a new agreement in 2002. Plaintiff has never participated in any negotiations for the union, including those of 2002. (Pleading No. 59, Ex. A, Melton Summerville Dep. at 6, 46–47, 162, 259, and 260.)

With respect to the contract negotiations between Local 77 and Duke, Defendants show by competent and admissible evidence that negotiations began in early May 2002.[2] Approximately fourteen negotiation meetings were held between early May and late June. Many issues were discussed, including shift preferentials, discipline, reductions in force, vacations, holidays, absenteeism, health insurance, and wages. (Pleading No. 59, Ex. B, Gibson Aff.; Aleise Gyant Aff.) On the issue of wages, Defendants' evidence is that Local 77 initially proposed a 5% wage increase. Duke took the position that many workers were already over scale for the relevant market. Duke also proposed a change so that current employer contributions for retirees would be eliminated for new hires. At the conclusion of negotiations, Duke's final wage offer was 2% for the first year, 2% for the second year, and 2.25% for the third year, combined with a continuation of employer contributions upon retirement for new hires. Duke also indicated that a slightly higher wage increase was possible if the employer contributions described above were discontinued. Language changes were also made on non-wage issues such as disciplinary action, scheduling, and other matters. (Pleading No. 59, Ex. B., Gibson Aff.; Gyant Aff.; Denise L. Evans Aff.)

2. Plaintiff disagrees. He says negotiations did not begin in early May but began only very shortly before the collective bargaining agreement was to expire on June 30. However, Plaintiff has presented no admissible evidence (*see* Fed.R.Civ.P. 56(e)) in support of this assertion. The record is clear that Plaintiff has no personal knowledge concerning negotiation meetings, and he has presented no witness testimony or documentary evidence in support of claim.

Local 77 scheduled a ratification meeting for June 30. The negotiating team for Local 77 outlined Duke's final offer and recommended its acceptance. There was considerable discussion. Plaintiff participated in the discussion and opposed acceptance of the offer, arguing that the wage offer was too low. Plaintiff Summerville stated at the meeting that if he were allowed one week's time, he could easily get Duke to improve its wage offer. (Summerville Dep. at 159 and 161.) At the end of the discussion, a large majority voted to accept Duke's offer.

Plaintiff's deposition testimony gives insight into his reasons for opposing Duke's offer. He believed that the only reason Local 77 even bothered to hold a ratification meeting, rather than just signing the new agreement, was because he had complained about the changed attendance policy in the agreement. Plaintiff was unhappy with the change, and he was unhappy with Local 77 in general. In his words, "I knew they [were] on the take for years ..." *Id.* at 227. According to Plaintiff, Duke was paying money under the table to members of the union negotiating team in order to induce them to negotiate a weaker contract for the union. *Id.* at 228. When Defense counsel suggested to Plaintiff that this was a strong statement, Plaintiff responded, "I will stand behind it." *Id.* When asked who was receiving money, Plaintiff responded, "[t]he International [AFSCME] had to be involved ..." *Id.* at 229. When asked again who was receiving money, Plaintiff said he did not know who received it, and when asked for his evidence, he said, "[i]t is going to be a circumstantial case." *Id.* Plaintiff also stated that part of his case was going to be that someone from AFSCME was also receiving kickbacks from Duke and that is why the Judicial Chair for AFSCME ruled the way he did during the hearings. *Id.* at 258. Plaintiff could identify no witnesses

and had no personal knowledge of kickbacks to anyone, but he repeated that "I am going to put on a circumstantial case of racketeering." *Id.*

All of the factual background outlined above relates primarily to the ratification meeting that took place on June 30, 2002. But the facts and circumstances that directly underlie Plaintiff' Amended Complaint in this action began shortly *after* the ratification hearing. Plaintiff Summerville filed charges under the AFSCME Constitution against Local 77 and asked for an "emergency injunction" against execution of the collective bargaining agreement between Local 77 and Duke. (Pleading No. 64, John Seferian Aff. ¶ 4; Ex. 2.) On July 22, Mr. John Seferian, as Judicial Chair for AFSCME, wrote to Plaintiff Summerville and advised that he was required to identify particular sections of the International Constitution he believed to have been violated by Local 77. *Id.*, Ex. 3. On July 25, Plaintiff faxed to Chair Seferian allegations that all but two members of the Executive Board had violated Article X, Section (D), which prohibits "acting in collusion with management to the detriment of the welfare of the union or its membership," and Section (G) which prohibits "willful violation of a legally negotiated and approved collective bargaining agreement." *Id.* ¶ 5; Ex. 4.

On July 29, Chair Seferian accepted jurisdiction over the charge and sent each party (Plaintiff and Local 77) a list of trial officers eligible to hear the matter. Each party could strike up to two officers. When he did not hear from either party in the time allowed, Chair Seferian advised them that he would serve as the hearing officer and that trial was scheduled for October 8, 2002.

On September 23, Plaintiff Summerville sent a letter to Chair Seferian requesting

that Local 77 provide him with certain information and with documents described as "[a]ll new Articles that will appear in the new agreement as they will read in the new Union Book." *Id.* ¶ 6; Ex. 7. Chair Seferian wrote to Plaintiff on September 24 and stated that the information sought by Plaintiff was, in contravention of Article X, Section (F) of the International Constitution, not relevant to the issues of collusion raised by his charges. *Id.*, Ex. 8. On September 27, Plaintiff again requested the same information. On September 30, Chair Seferian wrote a letter to Local 77, requesting that Plaintiff be provided with the documents in question.

The trial on Plaintiff's charges against Local 77 opened on October 8, 2002. Plaintiff Summerville was present, but no representative for Local 77 was present. Plaintiff testified in support of his claims, and at the conclusion of the hearing the Chair advised that he would be ruling on the matter within thirty days of receiving the hearing transcript from the court reporter. *Id.* ¶ 7; Ex. 11. Plaintiff now asserts that Chair Seferian told the court reporter not to furnish Plaintiff with a copy of the transcript. Chair Seferian denies this, and the transcript of the hearing shows that the Chair advised Plaintiff he could purchase a copy of the transcript from the court reporter.[3] *Id.*, Ex. 11 at 6.

Chair Seferian received the hearing transcript on November 5, 2002. By that time, Plaintiff had sent to the Chair a further "charge" against Local 77. Plaintiff asserted that Local 77 had failed to furnish him the documents he requested before the October 8 hearing. At this point, Chair Seferian found that the documents requested by Plaintiff were not

"pertinent to the case" and that only pertinent documents were required to be produced under the provisions of the International Constitution. *Id.* ¶ 8. Therefore, Chair Seferian found that the claim made by Plaintiff was not a chargeable offense. Chair Seferian wrote to Plaintiff on October 18, advising him of this ruling. *Id.*, Ex. 13. Plaintiff appealed the Chair's ruling to the full Judicial Panel of AFSCME. On March 19, 2003, the Judicial Panel, with Chair Seferian not participating, affirmed the ruling that dismissed Plaintiff's second charge against Local 77. Plaintiff had the right of further appeal under the International Constitution, but he filed no appeal. *Id.* ¶ 9.

In November 2002, Chair Seferian was contacted by the accused party, Local 77, with a request that the hearing on Plaintiff's initial charge be reopened. Up to that time, Chair Seferian had not received any contact from Local 77. (Seferian Aff. ¶ 10.) In his affidavit filed in this action, Chair Seferian specifically denies Plaintiff's allegation that he conspired with officials of Local 77 to hold the October 8 hearing with only Plaintiff present so that Local 77 could see Plaintiff's case and better prepare for a second hearing. *Id.* Chair Seferian advised Local 77 to put its request for a rehearing in writing and he would consider it. Local 77 filed such a written request, representing that it had arranged to have field services area director George Johnson represent it at the October 8 hearing, but Mr. Johnson had become ill (and failed to request a continuance) and Local 77 had awaited instructions from Mr. Johnson. Local 77 accepted ultimate responsibility for its failure to

---

**3.** In the procedural posture of the case, the Court cannot and does not resolve factual disputes on which each side has presented admissible evidence. However, this factual

dispute, like many others between the parties, does not involve a matter material to the legal positions of the parties.

attend the hearing and extended an apology. *Id.*, Ex. 18.

Based upon the application of Local 77 for a rehearing, Chair Seferian decided to reopen the trial to allow the accused party to present a defense. *Id.* ¶ 10. Chair Seferian avers that there is no provision of the International Constitution that prohibits reopening a trial and that he has done so on numerous occasions in the past when he felt it was appropriate. *Id.* On November 15, Chair Seferian wrote to the parties, advising them that the trial would be reopened. Plaintiff objected to the order and said that he would not take part in a new trial. *Id.* ¶ 11; Ex. 20. Chair Seferian overruled Plaintiff's objection on November 19. The trial date was set for March 24, 2003, and the parties were given proper notice.

Plaintiff Summerville did not attend the reopened trial. Two witnesses testified for Local 77 and exhibits were introduced, including a document that contained the information Plaintiff had previously requested. At the close of the trial, Chair Seferian announced that he would issue his decision after receiving the transcript. On April 23, 2003, he issued the following decision, based on the evidence presented at both hearings:

> While Brother Summerville might not have been satisfied with the overall contract negotiated by the bargaining committee, the undersigned can find no violations of the International Constitution relative to the manner the negotiations were conducted and the ensuing ratification vote. There were conflicting statements as to when the notices for the ratification meeting were distributed and as to what exactly was or was not said at the ratification meeting. There was no evidence presented by Brother Summerville that proved that the accused parties acted in collusion with

management or willfully violated a legally negotiated collective bargaining agreement. The charging party failed to carry the burden of proof in this case.

(Seferian Aff. ¶ 12; Ex. 24.)

Plaintiff Summerville did not appeal. On August 15, 2003, he filed the present civil action in federal district court.

Plaintiff, in response to Defendants' summary judgment motions, "list[s] the facts" that he contends show that he is entitled to judgment and that Defendants are not. (Pleading No. 68, Pl.'s Resp.) He says that Local 77 and AFSCME have admitted that a request for documents was sent to Local 77, and that Local 77 admits that they did comply with the authorized body [the Judicial Chair] that made the request on behalf of Plaintiff. Further, Plaintiff says that the facts show that Local 77 was not at the October 8, 2002 trial. And the facts also show that Plaintiff did not consent to reopening the trial on March 24, 2003. According to Mr. Summerville, his lack of consent renders the reopened trial "a constitutional violation," and the decision of the Chair "would be a Due Process Violation against the Plaintiff." *Id.* at 4. Plaintiff argues that the International Constitution requires that all decisions be rendered by the trial body within thirty days of the hearing, absent consent of the parties. He contends that since he did not consent to the March 24, 2003 hearing, and the notice thereof that he received was not sent by registered mail, the reopened trial is a nullity. According to Plaintiff, Defendants violated the International Constitution when Chair Seferian did not make findings of facts and conclusions of law within thirty days of the October 8, 2002 hearing. Plaintiff Summerville states that his rights were further violated when the full Judicial Panel did not send to him, by registered or certified mail, its decision upholding the decision of

Chair Seferian as to what constituted a chargeable offense. Plaintiff says he never received this ruling. *Id.* at 6. Plaintiff says that many statements made in the affidavit of Aleise Gyant [Local 77's secretary-treasurer] are not true. He concedes he did not exhaust his appeals under the International Constitution, but he contends that AFSCME's hearing procedures were "unreasonable and unfair" and exceeded the four month period allowed for decision by over four months' time, thereby excusing further appeal.

All parties have filed summary judgment motions. A party is entitled to judgment as a matter of law upon a showing that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The material facts are those identified by controlling law as essential elements of claims asserted by the parties. A genuine issue as to such facts exists if the evidence forecast is sufficient for a reasonable trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating a forecast of evidence on summary judgment review, the court must view the facts and inferences reasonably to be drawn from them in the light most favorable to the nonmoving party.

When the moving party has carried its burden, the nonmoving party must come forward with evidence showing more than some "metaphysical doubt" that genuine and material factual issues exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *cert. denied,* 481 U.S.

1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). A mere scintilla of evidence is insufficient to circumvent summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Instead, the nonmoving party must convince the court that, upon the record taken as a whole, a rational trier of fact could find for the nonmoving party. *Id.* at 248–49, 106 S.Ct. 2505. Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." *Mitchell v. Data General Corp.,* 12 F.3d 1310, 1315–16 (4th Cir.1993).

After careful review, and for reasons set out below, the Court finds that Defendants are entitled to summary judgment on all claims Plaintiff Summerville has stated in this action. Undoubtedly, Plaintiff Summerville has many disputes and disagreements with Defendants, but on the legal claims he presents to this Court, he has presented no competent evidence to show a material factual dispute that must be determined at trial.

In his Amended Complaint, read liberally in view of Plaintiff's *pro se* status, Plaintiff appears to claim that Local 77 violated the International Constitution and participated in a conspiracy with AFSCME's judicial chair to deprive Plaintiff Summerville of a fair trial. His charge before Chair Seferian (but not before this Court) was that the union bargaining team colluded with Duke to negotiate a contract that was unfavorable to union members. Plaintiff contends that the October 8, 2002 trial was simply staged by Defendants, without Local 77 present, so that Local 77 could preview Plaintiff's case and thereafter be prepared to meet the case at a later, reopened trial. Plaintiff also contends that Local 77 violated the International Constitution by conspiring with AFSCME to deny Plaintiff access to the documents he requested as a part of the hearing process.

■ There are a number of reasons why Plaintiff's claims fail as a matter of law. He failed to exhaust internal union remedies before coming to court. Article XII, Section 10 of the International Constitution provides that "[n]o member ... shall institute any civil action, suit or other proceeding in any court or other tribunal ... on account of any controversy or dispute for which a remedy is provided in this Constitution ... without first exhausting all such remedies, including all available appeals ...." (Seferian Aff. ¶ 2; Ex. 1 at 127.) It is undisputed that Plaintiff did not exhaust an appeal route available to him under the International Constitution. Plaintiff contends that exhaustion should be excused because the procedures of the tribunal were "unreasonable and unfair," but this argument misses the mark. While Plaintiff had remedies available to him, the proceedings were not final. He was required to present to the proper authorities under the International Constitution his contention that the proceedings had been unfair. Plaintiff contends that the Constitution is a contract between the parties, but if this is so, he was bound by that contract, also. He was required to exhaust his remedies under the contract before bringing an action in this court. *See generally Campbell v. Railroad Trainmen*, 4 Ohio App.2d 81, 212 N.E.2d 650 (1965); *Allander v. Carpenters Dist. Council of Denver*, 145 Colo. 164, 168, 358 P.2d 8, 10 (Colo.1960)("Thus a member is not at liberty to disregard his union's constitution and by-laws, ignore its lawful dictates, nor may he appeal to a court for relief until he has exhausted the appellate procedures prescribed by this organization."); *see also Fabian v. Freight Drivers and Helpers Local No. 557*, 448 F.Supp. 835, 838–39 (D.Md.1978).

■ Plaintiff's primary claim is that Defendants conspired to violate his rights by staging a first trial, at which Local 77 did not appear, and then reopening the trial for further proceedings after Local 77 had seen Plaintiff's evidence. In the first place, Plaintiff has absolutely no evidence of any "conspiracy" between Local 77 and AFSCME, upon which his entire claim rests. General assertions of conspiracy may be made at the initial pleading stage of litigation without production of evidentiary support at that time, but at the summary judgment stage there must be evidence. Mere speculation and suspicion will not suffice. Plaintiff has shown no personal knowledge of conspiratorial agreements. He has presented no witnesses whose testimony, and no documents whose contents, raise a reasonable inference of conspiracy. No jury could hear the evidence relied upon by Plaintiff and reasonably conclude that it shows that Defendants Local 77 and AFSCME conspired to deprive Plaintiff of rights under the International Constitution in the manner he alleges. His principal claim does not advance beyond the purest conjecture. As his deposition shows, Plaintiff Summerville believed that his union representatives were "on the take" in their negotiations with Duke. He has absolutely no evidence of this, and all of the competent evidence before the Court is directly to the contrary. His claim that Local 77 and AFSCME "conspired" to defeat his union charges concerning the negotiations is an extension of his unsupported belief in collusion between Local 77 and Duke. Where there is no evidence, there is no trial, and Plaintiff has no evidence.

■ Plaintiff secondary claim is that his rights under the International Constitution were violated during hearing procedures before the Judicial Chair because Local 77 did not provide him with the documents he requested for use at the hearing. The flaw in Plaintiff's argument is a fundamen-

tal one. It is undisputed that Local 77 *did* provide, at the reopened hearing of March 24, 2003, the very documents and information Plaintiff had requested. Plaintiff objected to that rehearing, of course, but his objection was overruled. Whatever due process right may arise from the International Constitution cannot save Plaintiff's claim. It is undisputed that he received actual notice of the reopened hearing and had the right to be heard at that hearing. Due process can afford him nothing more. Plaintiff made his own decision not to participate in the reopened hearing. The only competent evidence before the Court is that the Judicial Chair has reopened hearings in the past when he felt it appropriate, and review of the International Constitution shows, not surprisingly, that the reopening of a hearing before a decision is made does not violate any express or implied provision of the International Constitution. *See Washington v. Laborer's,* 792 F.2d 94 (8th Cir.1985); *Brown v. Sombrotto,* 523 F.Supp. 127, 133 (S.D.N.Y. 1981)(where a constitution is silent, court may look to past practices). It is hardly uncommon for such reopenings to occur in quasi-judicial proceedings where procedures are less formal than in federal litigations. Again, where Plaintiff sees "conspiracy," no reasonable jury could see along with him. In the end, Plaintiff "received" his documents as provided by the International Constitution. By his own volition, however, he was not present at the March 24, 2003 hearing when the documents were placed into evidence. Local 77's presentation of the evidence at the March 24, 2003 hearing defeats Plaintiff's claim of breach of contract.

Plaintiff's *pro se* complaint may suggest additional minor claims, although their articulation is difficult to discern. Perhaps Plaintiff means to claim that his due process rights under the International Constitution were violated because he was denied the right to file charges on one particular occasion. Chair Seferian ruled that Plaintiff's October 17, 2002 letter, in which he complained of not receiving documents, did not allege a chargeable offense. The Chair's ruling was later affirmed by the full Judicial Panel. Plaintiff did not further appeal, although he was permitted to do so under Article XI, Section 15 of the International Constitution.[4] This "due process" claim fails as a matter of law. Plaintiff Summerville did not exhaust his available remedies. Moreover, the documents in question were produced by Local 77 at the reopened hearing, mooting the charge of failure to produce. *See* Article X, Sections 13(F) and 12(K) of the International Contract (production may be made at trial.)

Additionally, Plaintiff makes passing reference to the Labor Management Reporting and Disclosure Act of 1959. 29 U.S.C. § 414 provides, in relevant part, that it is the duty of the secretary or principal officer of each labor organization to forward a copy of each collective bargaining agreement made by such organization to each employee who requests a copy. Further, such officer shall maintain a copy of any such agreement available for inspection by any employee. It is uncontested that all collective bargaining agreements between Local 77 and Duke, as soon as they are signed and printed, are made available to Local 77 members. Plaintiff has presented no evidence that he made a request for the full collective bargaining agreement and was denied access to the agreement. Plaintiff's document request within the AFSCME hearing proceedings

---

**4.** Plaintiff contends that he did not receive the ruling of the Judicial Panel. If so, he was nonetheless required to show the diligence within some reasonable period of time to inquire as to the status of his appeal.

for "[a]ll new Articles that will appear in the new agreement as they will read in the new Union Book" (Seferian Aff.; Ex. 7) is not a request for a copy of the full collective bargaining agreement within the meaning or coverage of § 414. In any event, it is uncontested that all of the documents and information that Plaintiff requested during the hearing proceedings were in fact produced at the March 24, 2003 hearing. Plaintiff's § 414 claim has no legal validity.

*Conclusion*

For reasons set forth above, **IT IS OR-DERED** that Plaintiff's motion to compel discovery (Pleading No. 65) is **DENIED**. Further, **IT IS RECOMMENDED** that Plaintiff's motion for judgment on the pleadings or for summary judgment (Pleading No. 48) be denied; that Defendants' motions for summary judgment (Pleading Nos. 58 and 62) be granted; and that this action be dismissed with prejudice. Pleading Nos. 37, 39, 42, and 45 were resolved by the parties without intervention by the Court, and AFSCME's motion to dismiss (Pleading No. 4) is moot. Feb. 2, 2005.